594 P.2d 558

**STATE of Arizona, Appellee,**

**v.**

**Roman R. STONE, Appellant.**

**No. 1 CA–CR 3191.**

Courts of Appeals of Arizona,
Division 1,
Department A.

March 20, 1979.

Rehearing Denied April 23, 1979.

Review Denied May 8, 1979.

John A. LaSota, Jr., Former Atty. Gen. by William J. Schafer, III, Chief Counsel, Criminal Division, Asst. Atty. Gen., Crane McClennen, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Joel M. Glynn, H. Allen Gerhardt, Jr., Deputy Public Defenders, Phoenix, for appellant.

## OPINION

FROEB, Judge.

Appellant, Roman R. Stone, was charged by information in Counts I and II with kidnapping with intent to hold and detain as a shield or hostage in violation of A.R.S. § 13–492, and in Counts III and IV with robbery while armed with a gun in violation of A.R.S. §§ 13–641 and 13–643(B). The State also alleged that appellant had been convicted of a prior felony, namely, robbery while armed with a knife (Maricopa County Superior Court Cause No. CR–90425). Following a trial by jury, appellant was found guilty on all counts, and the prior conviction was proven. The trial court entered judgment and sentenced appellant to concurrent terms of twenty to fifty years on Counts I and II, this to be consecutive to the sentence of fifteen years to life previously imposed on the prior conviction, and concurrent terms of fifteen to forty years on Counts III and IV, these to be consecutive to the terms on Counts I and II. Appellant appeals from the judgments and sentences of the trial court, presenting the following issues for our consideration:

1. Whether appellant was given adequate *Miranda* warnings prior to questioning following his arrest;

2. Whether appellant had a constitutional right to act as co-counsel with his court-appointed attorney;

3. Whether there was sufficient evidence to support the jury's guilty verdict on two counts of kidnapping with intent to hold or detain as a shield or hostage;

4. Whether appellant was improperly convicted of a prior felony conviction because that conviction was based on inadmissible hearsay evidence;

5. Whether the voluntariness jury instruction should have included a reference to the *Miranda* rights.

On February 25, 1977, Officer Daniel Day of the Maricopa County Sheriff's Office was sent to Maricopa County Hospital to transport a prisoner back to jail. Upon arriving at the hospital, Day was advised by two officers that he was to remain at the hospital with appellant. Apparently, appellant had attempted suicide at the prison, and was being treated for resulting injuries in the emergency room of the hospital. The attending physician directed Officer Day to transport appellant from the emergency room on the first floor to the fourth floor. After Day and appellant had entered an elevator, appellant pointed what appeared to be a small caliber pistol at Day. In actuality, it was a pistol fashioned from soap. Appellant then removed Officer Day's fully-loaded 357 magnum service revolver. At appellant's direction Day and appellant left the hospital and proceeded toward the hospital parking lot, where appellant forced Day to remove his leg irons.

Day was directed to flag down an approaching vehicle driven by James Moye. Appellant ordered the driver to "move over," and told Day to drive them away from the hospital. During the trip, appellant took money and clothing from Day and Moye. Appellant forced Day to drive the car to several places and ultimately released Day and Moye in the area of Crown King on the morning of February 26, 1977. Day obtained a ride from a passing motorist to Bumble Bee, where he contacted local authorities.

In the meantime, Patrolman Neil Flores of the Department of Public Safety received an all points bulletin to be on the lookout for appellant. The following day Flores identified appellant at a gas station in Cordes Junction. Since he was off duty, Flores went home and informed local authorities that he had seen appellant. He then returned to the Cordes Junction area and, after spotting the suspect vehicle again, blocked the road with his car, causing the two cars to collide. Appellant was arrested, read his *Miranda* rights from a standard "rights card," transported to Prescott, and then from Prescott to Phoenix by Detectives Bud Cheatham and Ed Scott. While enroute to Phoenix, Detective Scott advised appellant of his *Miranda* rights from memory. Thereafter, appellant made several incriminating statements which were subsequently admitted into evidence at appellant's trial.

## VOLUNTARINESS OF ADMISSIONS

Appellant argues on appeal that he was not given adequate *Miranda* warnings prior to questioning following his arrest and that the trial court committed reversible error by allowing into evidence certain admissions made by appellant during that questioning. Specifically, appellant contends that at the hearing in which the trial court determined the voluntariness of the admissions in question, there was no evidence presented by the State that appellant was explicitly told, prior to any questioning, that he had a right to an attorney during subsequent questioning. The transcript of the voluntariness hearing shows that the only evidence presented by the State concerning the extent of the *Miranda* warnings given appellant prior to his admissions was that appellant was advised by Detective Scott

> that he had the right to remain silent; that anything he said could be used against him; and that he had a right to have an attorney present with him prior to questioning; and if he couldn't afford one, the State would provide him with one.

■ It is arguable whether the trial court committed initial error by allowing appellant's admissions into evidence solely on the basis of the testimony concerning the *Miranda* warnings given by Detective Scott. However, we believe that any initial error committed by the trial court at the voluntariness hearing was cured by the subsequent introduction at the trial of evidence that each requirement of *Miranda* had been met prior to the questioning of appellant. *See Samuels v. United States,* 397 F.2d 31 (10th Cir. 1968). The record on appeal shows that at the trial the State presented uncontradicted testimony that, immediately following appellant's arrest, one of the arresting officers, Sgt. Leonard, read appellant a full *Miranda* warning from a standard *Miranda* "rights card." This "rights card" included a specific warning that appellant had the right to the presence of an attorney both prior to and during questioning. Under Arizona law, once a defendant

has been fully advised of his rights, there is no requirement that the warnings be repeated each time questioning is resumed. *State v. Allen,* 111 Ariz. 125, 524 P.2d 502 (1974); *State v. Miller,* 110 Ariz. 597, 522 P.2d 23 (1974). We hold that any error committed by the trial court at the voluntariness hearing was completely dissipated.

## HYBRID REPRESENTATION

Appellant next argues that the trial court erred in denying appellant's request to act as co-counsel with his court-appointed attorney. It is appellant's contention that he has a constitutional right, under the federal and state constitutions, to act as co-counsel with his assigned attorney. We cannot agree.

■ It is established that a criminal defendant, both in federal and state court, has a federal constitutional right to represent himself, or, in the alternative, to be represented by counsel. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Many federal courts have held, however, that an accused has no federal constitutional right to hybrid representation, that is, to represent himself and be represented by an attorney at the same time. *United States v. Williams,* 534 F.2d 119 (8th Cir. 1976); *United States v. Hill,* 526 F.2d 1019 (10th Cir. 1975); *United States v. Wolfish,* 525 F.2d 457 (2nd Cir. 1975); *United States v. Dujanovic,* 486 F.2d 182 (9th Cir. 1973).

■ We also reject appellant's suggestion that the Constitution of the State of Arizona, art. 2, § 24, which provides that "the accused shall have the right to appear and defend in person, *and* by counsel," (emphasis added) should be interpreted to mean that an accused has a state constitutional right to hybrid representation. We think that art. 2, § 24, was intended to give an accused the right to represent himself or the right to be represented by counsel, but not the right to have his case presented in court both by himself and by counsel acting alternately or at the same time.

The decisions of the state courts of California, governed by a nearly identical constitutional provision, support our interpretation of art. 2, § 24. *See, e. g., People v. Mattson,* 51 Cal.2d 777, 336 P.2d 937 (1959). We agree with the following statement by the California Supreme Court in *People v. Mattson:*

[D]espite the constitutional and statutory provisions that defendant has the right to appear and defend in person *and* with counsel, defendant is not entitled to have his case *presented* in court *both by himself and by counsel* acting at the same time or alternating at defendant's pleasure. So long as defendant is represented by counsel at the trial, he has no right to be heard by himself; conversely, when defendant has intelligently declined the aid of counsel he has no right to interrupt the trial with a demand for legal assistance. (citations omitted.)

51 Cal.2d at 789, 336 P.2d at 946.

In light of the foregoing, we conclude that there is no constitutional right to hybrid representation under either the federal or our state constitution. Since appellant did not waive his right to appointed counsel, and since appellant does not claim that he was denied effective representation by his appointed counsel, the trial court did not err in refusing to allow appellant to appear as co-counsel with his court-appointed attorney.

### SUFFICIENCY OF THE EVIDENCE

Appellant next argues that there was insufficient evidence introduced at the trial to support the jury's verdict of guilty on two counts of kidnapping with intent to hold or detain the victims as a shield or hostage. Specifically, appellant contends that there was no evidence presented that appellant *intended* to hold or detain the victims as "shields" or as "hostages," as those terms are used in A.R.S. § 13–492. A.R.S. § 13–492 provides, in pertinent part:

A. A person . . . who . . . kidnaps or carries away any individual by any means whatsoever with intent to hold or detain, or who holds or detains any individual . . . as a shield or hostage . . . .

We note that the State, in charging appellant with two counts of kidnapping in violation of A.R.S. § 13–492, alleged that appellant kidnapped each of his victims with intent to hold or detain *as a shield or hostage.* Also, at trial the State attempted to prove that appellant kidnapped his victims with intent to hold or detain as shields or hostages, and the trial court instructed the jurors that they must so find in order to reach a verdict of guilty on the kidnapping charges. Under A.R.S. § 13–492, it is clear that the State only needed to allege and prove that appellant kidnapped his victims with intent to hold or detain in order for the jury to reach a verdict of guilty. The descriptive phrase, "as a shield or hostage," was not essential to establish the commission of the crime of kidnapping in the instant case. However, since the State does not argue that this descriptive phrase is an unnecessary allegation which it was not required to prove, we need not reach this issue. Rather, we need only determine whether there is evidence in the record to support a conclusion that appellant intended to hold or detain his victims as shields or hostages.

In *State v. Gaines,* 113 Ariz. 206, 549 P.2d 574 (1976), the Arizona Supreme Court set forth the test to determine the amount of evidence needed to sustain a jury's verdict of guilty:

It is well settled in this jurisdiction that in reviewing a challenge to sufficiency of evidence in a criminal case, it is not the function of the reviewing court to weigh the evidence and decide whether it would reach the same conclusion as the trier of fact. *State v. Barnett,* 112 Ariz. 210, 540 P.2d 682 (1975). Rather, the appellate court must review the evidence in the light most favorable to sustaining the conviction and resolve all reasonable inferences in favor of the State. *State v. Moore,* 111 Ariz. 496, 533 P.2d 663 (1975). Only in circumstances where there is a complete absence of probative facts to support a judgment, *State v. Godsoe,* 107

Ariz. 367, 489 P.2d 4 (1971), or where a judgment is clearly contrary to any substantial evidence, *United States v. Goodrich,* 493 F.2d 390 (9th Cir. 1974), is it proper to reverse on the grounds of insufficient evidence.

113 Ariz. at 207–208, 549 P.2d at 575–576.

■ Words of a statute are to be given their ordinary meaning unless it appears from context or otherwise that a different meaning should control. *State v. Raffaele,* 113 Ariz. 259, 550 P.2d 1060 (1976). We can find no expression of legislative intent, nor any Arizona case law, concerning the meaning of the words "shield" or "hostage" in the context of A.R.S. § 13–492.

Webster's Third New International Dictionary (1971 Edition) provides the following definition of the word "shield":

A means or method of defense; to ward off; to defend; to protect with.

■ In view of the above dictionary definition, we think that the word "shield," in the context of A.R.S. § 13–492, implies the holding or detaining of a person by force as defense or potential protection against interception, interference, or retaliation by law enforcement personnel. *See State v. Kress,* 105 N.J.Super. 514, 253 A.2d 481 (1969).

Webster's Third New International Dictionary (1971 Edition) provides the following definition of the word "hostage":

A person given or kept as a pledge pending the fulfillment of an agreement, demand, or treaty

and the New Mexico Supreme Court, in *State v. Crump,* 82 N.M. 487, 484 P.2d 329 (1971), held that the term "hostage," when used in the context of the New Mexico kidnapping statute, implies

the unlawful taking, restraining or confining of a person with the intent that the person, or victim, be held as security for the performance, or forebearance, of some act by a third person.

82 N.M. at 493, 484 P.2d at 335.

■ From the foregoing, we determine that the term "hostage," as it is used in A.R.S. § 13–492, implies the holding or de-

taining of a person as security for the performance, or the forebearance, of some act by a third person.

■ On the record before us, we do not find any evidence that appellant intended to hold or detain either of his victims as security for the performance, or the forebearance, of some act by a third person. We do think, however, that there is sufficient evidence that appellant intended to hold his victims as potential protection against interference or interception by the police, or, in other words, as "shields." Officer Day testified as follows about appellant's intentions at the time he took the officer's revolver in the hospital elevator:

A. Prior to the door opening to the first floor [of the hospital], Mr. Stone advised me not to run or that he would kill me and he placed my service revolver inside his pants and pulled his shirt out over it.

Q. Where was he in relationship to you at this point?

A. Behind me.

Q. Were you armed at this point?

A. No, Sir.

Q. What happened next?

A. As the elevator door opened Mr. Stone again reminded me not to try anything or that he would kill me and he pulled me around and we went out the north exit of the hospital.

The record also shows that when Day and appellant left the hospital, appellant directed the officer, at gun point, to walk in front of him. James Moye, the other victim, testified:

Q. Did he [appellant] indicate from his attitude that he was determined?

A. Yes. He said he was not going to go back. He had indicated if there was any kind of complications, meaning that the police tried to intercept or interfere with us, he would not hesitate to kill us.

Q. And did you take him seriously?

A. I certainly did.

Q. Was there any indication that this was just a little ride and he intended to go back with Deputy Day?

A. No, there was no indication.

Q. And did he indicate to you then, from what you have just said, that he would kill you if necessary?

A. Yes.

We conclude that the above testimony reasonably supports an inference that appellant intended to hold his victims as shields against interference or interception by the police. We, therefore, hold that there was sufficient evidence to sustain the jury's verdict of guilty on the two kidnapping charges.

## PRIOR CONVICTION

■ Appellant also argues that the prior felony conviction should not have been found true because it was proven by inadmissible hearsay evidence. He contends that the certified copy of the May 21, 1976, minute order which was used to prove the prior conviction was inadmissible hearsay because the conviction was entered after a no contest plea, and, thus, did not fall within Rules of Evidence, Rule 803(22). We reject appellant's argument.

Rule 803(22) expressly provides a hearsay exception for the use of former judgments "to prove any fact essential to sustain the judgment." The State did not offer the former judgment to prove facts supporting the judgment. Rather, the certified copy of the minute entry was offered to prove the fact of the prior conviction. Thus, Rule 803(22) is not applicable.

A minute entry is properly admissible to prove a prior conviction under Rules of Evidence, Rule 803(8), the public records exception to the hearsay rule. That rule provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(8) Public records and reports. Unless the sources of information or other circumstances indicate lack of trustworthiness, records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . .

(B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel . . . . .

A minute order of a judgment or order of the superior court is a matter observed and recorded pursuant to duty imposed by law. A.R.S. § 11–553 provides that the clerk of the superior court shall "keep books of record required by law or rule of court." 17 A.R.S., Rules of Criminal Procedure, Rule 26.16, provides that, upon pronouncement of judgment and sentence, the clerk of the superior court "shall forthwith enter the exact terms of the judgment and sentence in the court's minutes." Verity is imported to a clerk's minutes. *State v. Biscoe,* 112 Ariz. 98, 537 P.2d 968 (1975).

Since an original minute entry would have been admissible, the certified copy of the May 21 minute entry was properly admissible pursuant to Rules of Evidence, Rules 902(4) and 1005.

## JURY INSTRUCTIONS RELATING TO *MIRANDA* WARNINGS

In his supplemental brief, appellant contends that the trial court should have instructed the jury concerning *Miranda* rights when it instructed them on voluntariness of statements made. He argues that when voluntariness is in issue, one aspect of the voluntariness inquiry is whether the *Miranda* rights have been given in accordance with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), but he refers us to no case authority so holding.

■ *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), held, before a confession could be admitted into evidence, the trial court must hold a hearing out of the presence of the jury and determine that the confession was voluntary. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) held that once the trial court determined that the confession was voluntary and, therefore, admissible, there was no constitutional requirement that the same issue be litigated

before the jury. Thus, any requirement that the jury consider the voluntariness of a confession is a matter of state law.

A two-tiered determination of voluntariness in Arizona was decreed by the holding of the Arizona Supreme Court in *State v. Pulliam,* 87 Ariz. 216, 349 P.2d 781 (1960). *Pulliam* was overruled, however, by *State v. Cobb,* 115 Ariz. 484, 566 P.2d 285 (1977) in which the Supreme Court held:

> In the future, due process will be adequately served in Arizona if the trial judge alone determines, before trial, the voluntariness of any admissions or confessions of an accused. However, if the defendant requests the voluntariness question be presented to and decided by the jury as well, the trial court must then give the appropriate instruction.

115 Ariz. at 488, 566 P.2d at 289. The trial court may refuse the accused's request for a voluntariness instruction if the evidence has not raised a question of whether his statements were voluntary. *State v. Williams,* 120 Ariz. 600, 587 P.2d 1177 (1978).

The voluntariness instruction given in this case was as follows:

> You must not consider any statements made by a defendant to a law enforcement officer unless you determine beyond a reasonable doubt that the defendant made the statements voluntarily. A defendant's statement is not voluntary whenever a law enforcement officer used any sort of violence or threats or any promise of immunity or benefit.

The necessity of giving *Miranda* rights to a suspect relates primarily to the *admissibility* of a statement or confession rather than the *voluntariness* of it. *See Miranda v. Arizona.* It is, thus, a procedural safeguard and the failure to give the *Miranda* rights would not make a statement or confession involuntary in the ordinary sense of that term. *Miranda v. Arizona.* Inasmuch as admissibility of evidence is the province of the trial judge and not the jury, we hold that there is no Arizona requirement that the jury determine issues concerning the giving of *Miranda* rights when an issue is raised concerning the voluntariness of a statement or confession.

For the foregoing reasons, the judgments and sentences are affirmed.

DONOFRIO, Acting P. J., Department A, and HAIRE, J., concur.