715 P.2d 752

**STATE of Arizona, Appellee,**

v.

**Edward Nelson RICKMAN, Appellant.**

**No. 6484.**

Supreme Court of Arizona,
En Banc.

March 10, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Diane D. Hienton, Asst. Attys. Gen., Phoenix, for appellee.

J. Douglas McVay, Phoenix, for appellant.

HAYS, Justice.

Appellant, Edward Nelson Rickman, was convicted of one count of armed robbery with a gun, A.R.S. § 13–1904(A), a class two, dangerous nature felony; and one count of escape in the second degree, A.R.S. § 13–2503, a class five felony. Appellant admitted allegations of prior convictions and that he was on probation at the time of the offenses alleged in the indictment. Thereafter, he was sentenced to life imprisonment for armed robbery, A.R.S. § 13–604.01 (now A.R.S. § 13–604.02), and to a term of five years for escape. These sentences were concurrent with each other but consecutive to any imposed upon parole revocation. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. §§ 13–4031 and 13–4035.

The facts follow. On January 4, 1984, appellant entered a Circle K convenience market at approximately 11:40 p.m. An employee, Linda Collins, was removing Christmas decorations when appellant pulled out a gun and forced her to give him the money in a cash register. After unsuccessfully attempting to obtain money from another locked register, appellant left the market. Collins watched appellant enter

an automobile and wrote down the license plate number.

The police determined through investigation that the automobile was owned by a coworker of appellant. The coworker testified that he lent the car to appellant on the night of the robbery. Subsequently, Collins identified appellant as the robber in a photographic line-up and at trial.

After appellant made an appearance at Justice Court, he was transported back to the Mesa Police Department. Appellant opened the door of the patrol car, jumped out, and dived under a partially opened gate. He was pursued by officers and apprehended. This formed the basis of the escape conviction.

Originally, appellant was assigned a public defender pursuant to Rule 6.1(b), Rules of Criminal Procedure, 17 A.R.S. However, the public defender withdrew when he discovered that appellant had retained counsel who represented appellant until March 28, 1984, the eve of the first trial date. At that time, a motion for change of counsel was granted and a public defender was appointed. Trial was set for April 5, 1984 and then again for May 3, 1984.

On May 3, 1984, appellant requested that the public defender be replaced by new counsel because of the public defender's caseload. The trial court denied the request to change counsel and reset trial for May 31, 1984.

On May 31, 1984, the public defender asked that trial be delayed due to his pending vacation. Although appellant refused to waive his speedy trial rights, the court on its own motion granted a continuance. Trial was reset for July 2, 1984.

In mid-June, appellant filed a motion for new counsel stating that the public defender could not possibly be prepared for trial if he was on vacation. On June 29, 1984, at hearings on the motion, appellant requested an attorney from outside the public defender's office. The court discovered that a conflict had arisen between appellant and his attorney as to which defenses to raise at trial. Since the court stated it was un-

willing to allow a change of counsel, appellant stated that he would handle the case himself. The same public defender was appointed advisory counsel.

The public defender assisted appellant through various hearings. Appellant sought to develop a defense that the police reports had been altered. On September 4, 1984, appellant accused counsel of collusion with the state and counsel asked permission to withdraw. The court granted the motion and appointed another attorney as advisory counsel.

On its own motion, the court asked for a Rule 11 evaluation of the defendant. The court was satisfied from the report that appellant was able to represent himself and stand trial. Thus, the proceedings continued.

On October 2, 1984, the court became dissatisfied with the newly appointed counsel's passive concept of an advisory attorney and removed him from the case. Another attorney was appointed to replace him as advisory counsel. Appellant, however, refused to see this attorney, and on December 12, 1984, the attorney moved to withdraw as advisory counsel. Appellant stated that he wanted the attorney to remain his advisory counsel and explained that he refused to see him because he feared for his life. Further, appellant informed the court that advisory counsel only had to help him select a jury since appellant did not intend to put on any defense. Although the court was willing to continue the case, appellant once again refused to waive his speedy trial rights. Trial was set for December 17, 1984.

On the day of trial, immediately prior to the selection of the jury, appellant informed his advisory counsel that he wanted him to take a more active role in the proceedings. Upon informing the court of this change in appellant's position, counsel told the court he felt that it was not the nature of an advisory counsel to cross-examine witnesses. Appellant had not planned any defense and prior to December 14 would not even talk to advisory counsel about the case.

Advisory counsel was troubled by being forced to cross-examine the state's witnesses on the issues appellant had raised in previous hearings. He told the court:

[Counsel]: And, Your Honor, not only do I think that . . . is an unfair burden to put on me at this point in time but I think I would have some ethical problems in coming forth with what I believe to be Mr. Rickman's defense in this matter as an attorney and as an officer of this Court. I don't think it is appropriate for me to attempt to put forth a defense which I neither understand nor that I particularly believe in or that I think is in Mr. Rickman's best interest to put forth.

After some of the things that Mr. Rickman has put on the record about evidentiary matters and materials that he will not be bringing forth and the fact that he does not intend on putting on a defense I'm really in a quandary as to exactly what I'm supposed to do or what the Court expects of me or what the Court of Appeals would expect of me at a later position.

The advisory attorney went on to state that he had no problem in defending appellant; however, he felt it was inappropriate to take over on the day of trial. He informed the court that he had prepared an opening and closing statement, but only on the generalities of the case with no specificity towards defenses.

Subsequently, the trial court ruled that the defendant could either be mute or conduct his own defense, because it was too late to require the advisory counsel to take a more active role. Appellant chose to represent himself at the trial with the assistance of the advisory attorney.

The jury found appellant guilty of the crimes charged in the indictment: armed robbery and escape. Appellant waived trial by jury of the prior convictions. He also acknowledged that he was on probation for a class 6 felony offense in Apache County at the time of the charged offenses. The state further submitted into evidence certified documents from Apache County to prove the probationary status.

## ISSUES PRESENTED

Appellant desired to proceed to appeal *pro se*. However, having failed to submit an opening brief, advisory counsel was ordered by this court to file appellant's opening brief. Counsel raises two issues for review:

1. Did the trial court err in failing to require advisory counsel to assume full representation of the appellant?

2. Was appellant's right against self-incrimination violated by the court's failure to advise appellant of this right prior to questioning appellant concerning his probationary status?

## I. *Right to Counsel*

Counsel for appellant argues that what transpired on December 17, 1984, was a clear and unequivocal request by appellant that his advisory counsel fully assume his representation. Because the court denied his requests, counsel maintains that appellant was denied his right to counsel. Further, he argues that the denial of his request violated Rule 6.1(e):

A defendant may withdraw a waiver of his rights to counsel at any time. He will not be entitled to repeat any proceeding previously held or waived solely on the grounds of the subsequent appointment or retention of counsel.

Counsel argues that the transcript reveals that both the advisory counsel and the court were operating under a misapprehension as to the law. First, advisory counsel was incorrect in assuming that he had to present the defense which appellant wanted presented. Second, the trial court was apparently unaware of the provisions of Rule 6.1(e).

Counsel claims that the trial court should have ordered advisory counsel to take over the defense and granted him a brief continuance to prepare the case. He maintains that the failure to appoint counsel deprived appellant of his right to assistance of counsel in violation of the sixth and fourteenth amendments of the United States Constitu-

tion and article 2, section 24 of the Arizona Constitution. The result was a trial that was a "farce and a sham."

The state argues that the record shows appellant did not withdraw his waiver of counsel. Rather, appellant sought only to maintain control over certain decisions which would have constituted a "hybrid" form of representation. Since there is no right to hybrid representation, the state urges that the court's refusal to force advisory counsel to take a more active role did not violate appellant's right to counsel. We agree.

■ The right to represent oneself is a constitutional right. *Faretta v. California*, 422 U.S. 806, 819–20, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). A demand to proceed *pro se* should be unequivocal. *State v. Hanson*, 138 Ariz. 296, 300, 674 P.2d 850, 854 (App.1983). Although the right to proceed *pro se* is different in nature from the right to counsel, that difference lies in the defendant's right to be informed of his right to have counsel. *Id.* However, once a defendant has chosen to proceed *pro se*, he is exercising a constitutional right. Courts therefore are to indulge every reasonable presumption against waiver of fundamental constitutional rights. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), citing *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393, 57 S.Ct. 809, 811–12, 81 L.Ed. 1177 (1937). In *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 953, 79 L.Ed.2d 122 (1984), the United States Supreme Court held that the constitutional right to proceed *pro se* commonly called the *Faretta* rights, *Faretta v. California, supra*, can be waived in part by allowing advisory counsel to participate in the defense. However, it is clear that unless the defendant consents to the participation of counsel, such participation can be an infringement on the right to proceed *pro se*. *Id.* Therefore, it follows that a trial court which has allowed a defendant to proceed *pro se*, must not infringe on that right by taking away control of the case without an unequivocal revocation of the defendant's waiver of counsel.

■ Once a defendant has waived his right to counsel, that waiver continues until he "clearly" indicates a change of mind. *State v. DeLuna*, 110 Ariz. 497, 502, 520 P.2d 1121, 1126 (1974); *see also State v. Steed*, 109 Ariz. 137, 139, 506 P.2d 1031, 1033 (1973). Under our rules, a "defendant may withdraw a waiver of his rights to counsel *at any time.*" Rule 6.1(e) (emphasis added). In reviewing the record, we find that appellant never withdrew his waiver of right to counsel. Rather, when asked directly by the court what he wanted, appellant's answer was hardly an unequivocal revocation of his waiver of right to counsel. Instead, his answer was confusing at best:

THE COURT: ... The last day is today ... So I think it's way too late in the ballgame to change his mind, if he has. I'm not certain Mr. Rickman has. He's always wanted to be his own lawyer. That kind of surprises me that he wants you to take more of an active role. I'm really surprised at that.

Is that what you want, Mr. Rickman?
THE DEFENDANT: Sir, I cannot go about things dishonestly. I cannot do things wrong. I've got to—I've—that—I can only do the things truthfully, honestly, the right way.

. . . .

For some reason which I know the Court's aware of I cannot do this, and, therefore, they want their trial; their [sic] going to have their trial.

. . . .

You understand what I'm saying? And that's it. They—we're set for trial this afternoon. We can go to trial. If I've got to sit here in this chair—you can make me sit here in this chair but you cannot make me ask questions.

. . . .

That's all understood if that's what they want, but they're going to have their trial.

Appellant's request that advisory counsel assume a more active role, therefore, does

not constitute a waiver of his self-representation right. Also, a "defendant does not have a constitutional right to choreograph special appearances by counsel." *McKaskle v. Wiggins, supra,* 465 U.S. at 183, 104 S.Ct. at 954. In *McKaskle* the Supreme Court of the United States recognized that trial courts sometime allow "hybrid" representation; however, there is no constitutional right to such representation.[1] 465 U.S. at 183, 104 S.Ct. at 953–54. Neither do we recognize any right to "hybrid" representation in Arizona. *State v. Stone,* 122 Ariz. 304, 307, 594 · P.2d 558, 561 (App. 1979).

Evidently, this trial court would have preferred a form of "hybrid" counsel since it dismissed the advisory counsel which refused to assume a more active role. However, the court's intentions were clearly thwarted by appellant who refused to discuss the case with his advisory counsel. Furthermore, appellant chose to arrive at the day of trial without any prepared defense and having subpoenaed no defense witnesses.

■ We conclude that since there is no right to hybrid representation and since appellant did not unequivocally withdraw his waiver of counsel, the trial court did not deny the appellant right to counsel.

### II. *Admission of Probationary Status*

Counsel next argues that the trial court violated appellant's right against self-incrimination by accepting his admission as to probationary status without first advising him of this right. U.S. Const. amend. V, XIV; Ariz. Const. art. 2, § 10.

The facts needed to resolve this issue are as follows. Appellant waived his right to a jury trial on the issue of prior convictions. The record reflects that the trial judge informed appellant of the consequences of such a waiver and found the waiver knowing, intelligent and voluntary pursuant to Rule 17.6. He was informed of his rights against self-incrimination, waived those rights and admitted the prior convictions. Shortly thereafter, appellant decided to admit the allegation of probationary status. The trial court attempted to go through the same "script" again; however, it never did. The appellant stated that he would not acknowledge being on parole for a New Mexico offense, but he conceded being on probation for a class 6 felony committed in Apache County. Thereafter, the trial court explained to appellant the implications of admitting his probationary status:

> THE COURT: All right. Now, do you understand by that admission—before I accept that, with that admission, just so you understand this, under our statute I have to sentence you to 25 calendar years. That's flat time, day for day. There's no early release of any kind. Do you understand that?
>
> THE DEFENDANT: Yes.

On appeal, counsel does not dispute that appellant was on probation at the time of the charged offense. Rather, counsel argues that the court should not have accepted the admission before advising the appellant of his right against self-incrimination.

■ An allegation pursuant to A.R.S. § 13–604.02, charging that a defendant committed the offense while on parole or probation must be supported by reasonable evidence. *See State v. Turner,* 141 Ariz. 470, 475, 687 P.2d 1225, 1230 (1984) (testimony of parole officer that defendant was on parole at the time of the offense and admission by the defendant of parole status was reasonable evidence); *see also State v. Allie,* 147 Ariz. 320, 710 P.2d 430, 434–35 (1985) (there is no distinction between probation and parole for purposes of A.R.S. § 13–604.02). Appellant's admission of his probationary status, coupled with the

---

**1.** "Hybrid" representation is the representation of a defendant by himself and by attorney at the same time. *State v. Stone,* 122 Ariz. 304, 307, 594 P.2d 558, 561 (App.1979). Such representation differs from advisory representation where counsel only gives a *pro se* defendant technical assistance in the courtroom but the attorney does not participate in the actual conduct of the trial. *Locks v. Sumner,* 703 F.2d 403, 407, *cert. denied,* 464 U.S. 933, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983).

certified copy of the minute entry from Apache County showing that appellant was placed on probation on August 17, 1983, for two years, constituted reasonable evidence.

 As to whether appellant was adequately warned of his right against self-incrimination, we have reviewed the record and found the warnings given by the trial court sufficient. Appellant knew that he could dispute his status. Indeed, with regard to the allegation of parole status, he refused to admit it thereby forcing the state to prove it. This shows he was aware of his rights. Further, the court had just previously found appellant capable of making a knowing, intelligent and voluntary waiver. There was no need for the court to once again question appellant as to his intelligence, nor that he was making the admission voluntarily. The court did inform appellant of the effect of his admission, a mandatory twenty-five year sentence, and, therefore, we find his waiver knowing. In light of these circumstances, we find that appellant made his admission with his eyes opened. There was no error in not reinforming appellant of his right against self-incrimination.

We have reviewed the record for fundamental error and have found none. A.R.S. § 13–4035.

The judgments of conviction and the sentences are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON, and FELDMAN, JJ., concur.