IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

———————————————

THE STATE OF ARIZONA,
*Appellee*,

*v.*

LARRY JAMES FOURNIER,
*Appellant*.

No. 2 CA-CR 2022-0108
Filed July 26, 2023

———————————————

Appeal from the Superior Court in Pima County
No. CR20190309001
The Honorable Michael J. Butler, Judge

**AFFIRMED**

———————————————

COUNSEL

Kristin K. Mayes, Arizona Attorney General
Alice M. Jones, Deputy Solicitor General/Section Chief of Criminal Appeals
By Jacob R. Lines, Assistant Attorney General, Tucson
*Counsel for Appellee*

James Fullin, Pima County Legal Defender
By Robb P. Holmes, Assistant Legal Defender, Tucson
*Counsel for Appellant*

**OPINION**

Judge O'Neil authored the opinion of the Court, in which Vice Chief Judge Staring and Judge Sklar concurred.

O' N E I L, Judge:

**¶1**        Larry Fournier appeals from his convictions and sentences for second-degree murder, theft, and theft of means of transportation.  He contends the trial court improperly denied his motion to strike a prospective juror, erred in certain evidentiary rulings, and incorrectly instructed the jury.  We affirm.

**BACKGROUND**

**¶2**        In October 2018, Fournier was living with a roommate, J.H., in Tucson.  At some point late that month, J.H. confronted Fournier about a $2,500 check that Fournier had apparently written to himself out of J.H.'s account.  The two men argued, and J.H. picked up his phone to call the police.  Believing he might be arrested, Fournier took the phone and punched J.H. in the head repeatedly until he "slumped" in the area of a desk.  He then took J.H. by the shirt and threw him to the floor.  Fournier saw J.H.'s motionless body and blood pooling on the floor, and he knew J.H. was dead.  He took J.H.'s car and left.

**¶3**        On October 28, Fournier began depositing checks from J.H. with signatures that did not match J.H.'s handwriting.  He deposited similar checks in Tucson on October 28 and 29, and in Albuquerque on November 1.  On October 30, he purchased a new set of tires in Phoenix, shut down his existing telephone number, and set up a new prepaid telephone line under a different number from the same cellular service provider.

**¶4**        J.H.'s brother called the police on November 2 because he was concerned for J.H.'s wellbeing and noticed suspicious withdrawals from his bank account.  When an officer visited J.H.'s residence that same day, he found J.H.'s vehicle gone but saw nothing else that seemed suspicious.  Officers returned to the residence on November 6 and immediately recognized the odor of a decomposing body.  The doors were locked, and there was no sign of forced entry.  After prying open the door to enter the

residence, officers found J.H.'s decomposed body with blood pooled around the head.

**¶5**         Officers arrested Fournier at a motel in Michigan on November 14.  J.H.'s car was found backed into a parking space in front of the motel, bearing a license plate belonging to a different vehicle.  A computer tower, its data wiped clean, was found in the car after officers noted the absence of any computer tower connected to a computer monitor located in J.H.'s home.

**¶6**         Fournier was tried on charges of first-degree murder, theft, and theft of means of transportation.  A jury found Fournier not guilty of first-degree murder but guilty of second-degree murder as a lesser-included offense.  The jury also found him guilty of theft and theft of means of transportation.  The trial court sentenced Fournier to concurrent terms of imprisonment, the longest being twenty years.  Fournier appealed.  We have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

## DISCUSSION

**¶7**         Fournier asserts the trial court abused its discretion by rehabilitating a prospective juror and denying a motion to strike that juror for cause.  He further asserts the court erred by admitting into evidence a handwritten confession that Fournier had given to a fellow jail inmate and by failing to sua sponte instruct the jury regarding the voluntariness of that confession.  He also challenges the court's instruction on manslaughter as a lesser-included offense and its decision to instruct the jury on flight or concealment.  Finally, Fournier argues the court erred by precluding him from presenting evidence of a prior legitimate check that J.H. had made out to him months earlier.

### I. Rehabilitation of Juror and Denial of Motion to Strike for Cause

**¶8**         We first address Fournier's arguments related to jury selection, which are informed by a recent amendment to the Arizona Rules of Criminal Procedure that eliminated peremptory strikes in criminal trials. *See* Ariz. Sup. Ct. Order R-21-0020 (Aug. 30, 2021).  As we recently discussed in State v. Jimenez, No. 2 CA-CR 2022-0062, ¶¶ 6-8, 2023 WL 4529422 (Ariz. App. July 13, 2023), this amendment entrusts our trial courts with the responsibility to determine the final composition of juries.  *See, e.g., State v. Hickman*, 205 Ariz. 192, ¶ 31 (2003).  The amendment did not, however,

change either our standard of review or the standard a court must apply to strike a juror for cause.

**¶9** A party challenging a juror for cause must show "that the juror cannot render a fair and impartial verdict" by a preponderance of the evidence. Ariz. R. Crim. P. 18.5(h); *see also State v. Comer*, 165 Ariz. 413, 426 (1990). "Because a trial judge has the best opportunity to assess whether a juror can be fair and impartial, appellate courts review such decisions only for abuse of discretion." *Hickman*, 205 Ariz. 192, ¶ 39. The court did not abuse its discretion by concluding that Fournier failed to meet his burden here.

**¶10** During jury selection, Fournier's attorney asked the panel several questions connected to the presumption of innocence and the burden of proof. He began by asking whether any of the prospective jurors would vote to convict Fournier if deliberations began immediately, without any evidence having been presented. No juror raised a hand. When he later asked whether any juror would "need more information before [making] a decision," several jurors raised their hands. Fournier's attorney responded by telling the panel "that's the incorrect answer," explaining "that unless he's proven guilty beyond a reasonable doubt, anything short of that standard requires a not guilty verdict." He asked the same question again, and no juror raised a hand. He asked whether any prospective juror would vote guilty, and no juror raised a hand. Finally, he asked whether any prospective juror would vote not guilty, and every juror but one raised a hand. When Fournier's attorney asked that juror why he did not raise his hand, the juror explained that he was trying to ensure that "when [he] raise[d his] hand that [he felt] solid behind that answer." He said he "wouldn't be able to find him guilty or not guilty without getting more information."

**¶11** Fournier's attorney did not ask further questions of the juror, but the trial court did. The court asked, "[I]f there are no facts that are presented to you and the law says you have to have facts presented to you, you would understand what the result would be, right?" The juror answered, "Yes, yes." The court acknowledged that it would "become clear. . . that there's evidence," and the question had been "kind of a trick question." The juror explained that he "wouldn't be able to say right now not guilty, because [he didn't] have any information in front of [him]," and he indicated that "in order to find someone not guilty, [he] would have to look over the facts." The court further clarified the question and asked, "[I]f no facts were presented, what other verdict could you have?" The juror

answered, "Certainly. I understand that." This juror, like the rest, had previously affirmed that he would have no difficulty holding the state to its burden to prove the defendant guilty beyond a reasonable doubt. He had acknowledged that he would have no reservation finding the defendant not guilty if the state failed to meet that burden. He had agreed that he would have no problem finding the defendant not guilty even if the defendant chose not to present any evidence, testify, or appear at trial. And he had indicated that he did not have "a hard time" with the notion that the defendant "is innocent" before the presentation of evidence.

¶12 Preliminarily, the trial court did not err by asking questions to rehabilitate the juror. In support of his argument, Fournier cites the comment to Rule 18.5(f), Ariz. R. Crim. P., added in connection with the elimination of peremptory strikes. The comment states:

> When feasible, the court should permit liberal and comprehensive examination by the parties, refrain from imposing inflexible time limits, and use open-ended questions that elicit prospective jurors' views narratively. The court should refrain from attempting to rehabilitate prospective jurors by asking leading, conclusory questions that encourage prospective jurors to affirm that they can set aside their opinions and neutrally apply the law.

This comment, however, does not alter the rule. *See State v. Aguilar*, 209 Ariz. 40, ¶ 26 (2004) ("Although a comment may clarify a rule's ambiguous language, a comment cannot otherwise alter the clear text of a rule."). Fournier was required to show that the prospective juror was "incapable of rendering a fair and impartial verdict." *State v. Acuna Valenzuela*, 245 Ariz. 197, ¶ 21 (2018) (quoting *State v. Lavers*, 168 Ariz. 376, 390 (1991)); Ariz. R. Crim. P. 18.5(h).

¶13 Trial courts retain broad discretion to either excuse or retain prospective jurors. *Jimenez*, 2023 WL 4529422, ¶ 8. The comment to Rule 18.5(f) does not limit or change its requirement that courts "conduct a thorough oral examination of the prospective jurors and control the voir dire examination." Ariz. R. Crim. P. 18.5(f); *see Aguilar*, 209 Ariz. 40, ¶ 26. Similarly, the comment does not strip away what the rule expressly provides by giving courts "the discretion to manage voir dire." Ariz. R.

Crim. P. 18.5(f); *see Aguilar*, 209 Ariz. 40, ¶ 26. The comment does not negate prior case law requiring courts to provide parties an opportunity for rehabilitation before striking a juror for cause. *See, e.g.*, *State v. Payne*, 233 Ariz. 484, ¶ 16 (2013) (court erred by failing to afford an opportunity to rehabilitate a prospective juror); Ariz. R. Crim. P. 18.5(f) ("the court must allow the parties sufficient time . . . to conduct a further oral examination of the prospective jurors").

**¶14** The rule does not forbid leading questions, by parties or the court, including those addressing rehabilitation. *See* Ariz. R. Crim. P. 18.5(f). A trial court thus does not err merely by asking a leading question during voir dire, even when the question touches on a juror's fairness and impartiality. *See Aguilar*, 209 Ariz. 40, ¶ 26. The comment appropriately encourages courts to use open-ended questions that elicit narrative answers when feasible. Ariz. R. Crim. P. 18.5(f) cmt. It also correctly cautions courts against relying on affirmative answers to leading, conclusory questions to rehabilitate a juror who appears biased, prejudiced, or otherwise unwilling or unable to render a fair and impartial verdict. *Id.*; *see* Ariz. R. Crim. P. 18.4(b); A.R.S. § 21-211(4). But the court here did not ask the juror to affirm his fairness and impartiality. It did not engage in the type of questioning the comment to Rule 18.5(f) cautions against.

**¶15** The juror's answers suggested possible confusion, concerning either his duty or the attorney's question, that did not demonstrate an inability to be fair and impartial. *See State v. Goodyear*, 98 Ariz. 304, 324-25 (1965) (when asked whether she would apply the presumption of innocence by voting for acquittal if the case was submitted without evidence, a juror's answer that she "d[id]n't think [she] could make up [her] mind" because she "d[id]n't know enough" suggested she was "willing to listen to the evidence before making up her mind" and did "not show that she was not fair and impartial"). The juror had not yet been fully instructed on the law. *See id.* at 325. The court's voir dire was directed to ensure the juror understood his duties and was willing and able to perform them. And while some of the court's questions were not open-ended, the juror answered narratively, which further demonstrated that there was no pressure to affirm neutrality. The purpose of voir dire is to elicit information relevant to a prospective juror's ability to render a fair and impartial verdict, not to confuse or catch one in some prior misconception or misunderstanding about the law without the benefit of proper and complete jury instructions. Ariz. R. Crim. P. 18.5(g), (h).

**¶16** Having properly managed voir dire by confirming the juror's understanding, the trial court did not abuse its discretion by denying the motion to strike for cause. *See Comer*, 165 Ariz. at 423-26 (finding no error in refusing to strike two jurors who said defendant was probably guilty, but later stated they could try to form a final opinion based on the evidence); *State v. Tison*, 129 Ariz. 526, 533 (1981) (upholding decision not to excuse juror who expressed opinion that defendant was likely guilty, but said she could judge case on evidence presented). At most, the juror's answers displayed confusion about how the presumption of innocence and the burden of proof would apply in a hypothetical case in which, unlike this one, no evidence was presented. When the court explained the juror's duty in more detail, he acknowledged his understanding to the court's satisfaction. Nothing in the juror's answers suggested unwillingness or inability to render a fair and impartial verdict, to render a decision based solely upon the evidence, or to follow the court's instructions when given.

**¶17** "Even a juror with preconceived notions about the defendant's guilt need not be excused if he or she agrees to decide the case based only on the evidence." *State v. Anderson*, 210 Ariz. 327, ¶ 28 (2005). The juror here expressed no such preconception. He simply indicated that he would "look over the facts" before rendering a verdict. This answer suggested the juror's willingness to hear the evidence before making up his mind and did not show that he was incapable of rendering a fair and impartial verdict. *See id.*; *Acuna Valenzuela*, 245 Ariz. 197, ¶ 21.

## II. Voluntariness of Written Admission

**¶18** At trial, the state introduced evidence of a handwritten letter that Fournier had passed to an inmate housed in a nearby cell in the Michigan jail where he awaited extradition to Arizona. The letter described the murder in detail, including circumstances that were otherwise known only to investigators. In a motion and at a pretrial hearing, Fournier challenged the letter's admission on the grounds that the state could not lay foundation for the letter and could not establish that it was written voluntarily. The trial court found the letter voluntary by a preponderance of the evidence, a finding Fournier now challenges on appeal.[1] Fournier

---

[1]Fournier also alludes to a "foundational argument" on appeal, but does not develop it, noting only that "the foundational argument was based on the failure to prove that the admission was voluntary." At trial, the state

also argues, for the first time on appeal, that a transcribed third-party interview admitted at the voluntariness hearing was hearsay and its admission violated the confrontation clause. Finally, Fournier asserts the court fundamentally erred by failing to instruct the jury on the voluntariness of his confession.

*A. Voluntariness finding*

**¶19**        A confession is admissible if voluntarily given. A.R.S. § 13-3988(A). The state bears the burden of proving that a confession is voluntary by a preponderance of the evidence. *State v. Trostle*, 191 Ariz. 4, 14 (1997). We review a trial court's ruling on the voluntariness of a confession for abuse of discretion. *State v. Newell*, 212 Ariz. 389, ¶ 22 & n.6 (2006). Coercive police activity is a necessary predicate to an involuntary confession. *Colorado v. Connelly*, 479 U.S. 157, 165-67 (1986); *State v. Huerstel*, 206 Ariz. 93, ¶ 73 (2003) ("[A] confession is involuntary only if it results from coercive activity by the state."); *State v. Amaya-Ruiz*, 166 Ariz. 152, 166 (1990) (defendant must show "coercive police conduct, rather than internal compulsion, induced his confession"). Our review of a motion to suppress is limited to consideration of the facts the trial court heard at the suppression hearing, *State v. Blackmore*, 186 Ariz. 630, 631 (1996), viewed in the light most favorable to sustaining its ruling, *State v. Hyde*, 186 Ariz. 252, 265 (1996).

**¶20**        The trial court did not abuse its discretion. At the suppression hearing, Fournier agreed to submit the voluntariness question to the court based on a transcribed interview of the inmate who received the letter. According to that transcript, Fournier wrote and delivered the letter to the other inmate without either involvement or knowledge of any state actor. Fournier agreed that police were not involved in eliciting the confession.

**¶21**        Any threats by a private person to coerce Fournier into confessing were irrelevant to the voluntariness of his confession unless police knew of those threats and exploited them. *See Huerstel*, 206 Ariz. 93, ¶ 73. The absence of police coercion alone adequately supports the trial court's finding that the confession was voluntary. *See also State v. Tucker*, 157 Ariz. 433, 445-46 (1988) (a confession was "voluntary" in the absence of "coercive police tactics," although other circumstances "may render his

---

laid foundation for admission of the letter through expert testimony that matched the letter to Fournier's handwriting.

statements so unreliable that they must be excluded under the evidentiary laws of the forum"). Nor was there evidence of threats or coercive pressures from any other source. Evidence at the hearing showed that Fournier gave his confession to the other inmate "freely" in a series of written notes to prevent others from overhearing. Fournier presented no contrary evidence.

### B. *Hearsay and confrontation clause*

¶22 At the suppression hearing, Fournier did not object to the trial court's consideration of the transcribed interview on hearsay and confrontation clause grounds. We therefore review only for fundamental, prejudicial error. *See State v. Escalante*, 245 Ariz. 135, ¶ 12 (2018). As noted, Fournier stipulated to submit the voluntariness issue to the court based on the transcript. Thus, even if the transcript's admission was error, Fournier invited it. *See State v. Parker*, 231 Ariz. 391, ¶ 61 (2013) (finding a party precluded from challenging admissibility of evidence on appeal after stipulating to its admission).

¶23 But the trial court did not err, fundamentally or otherwise, by receiving the transcript into evidence. Hearsay is generally admissible in a suppression hearing. *See State v. Keener*, 110 Ariz. 462, 465 (1974); *see also State v. Riley*, 196 Ariz. 40, ¶¶ 6-7 (App. 1999) (holding that confrontation rights do not apply to the same extent at a pretrial suppression hearing as they do at trial); Ariz. R. Evid. 104(a) (stating a court is not bound by rules of evidence in preliminarily determining the admissibility of evidence). Fournier cites no authority to suggest a trial court has a duty to sua sponte bar the admission of any alleged hearsay absent an objection. *See* Ariz. R. Crim. P. 31.10(a)(7)(A).

### C. *Voluntariness instruction*

¶24 Section 13-3988(A) sets conditions on the use of confessions as evidence in criminal trials. It provides as follows:

> In any criminal prosecution brought by the state, a confession shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was

> voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

Although this requires a court to instruct the jury appropriately when voluntariness is genuinely at issue, the "court may refuse [a] request for a voluntariness instruction if the evidence has not raised a question of whether his statements were voluntary." *State v. Stone*, 122 Ariz. 304, 311 (App. 1979); *see State v. Williams*, 120 Ariz. 600, 601-02 (1978) (affirming a trial court's refusal to instruct on voluntariness even though the defendant moved to suppress a confession and requested a voluntariness instruction, because the defendant "failed to present any evidence from which the jury could conclude that his statements were involuntary").

**¶25**        A defendant is entitled to a jury instruction if it is reasonably supported by the evidence. *State v. Bolton*, 182 Ariz. 290, 309 (1995). A mere inference is insufficient to support an instruction "because speculation cannot substitute for evidence." *State v. Vassell*, 238 Ariz. 281, ¶ 9 (App. 2015). Fournier did not request a voluntariness instruction at trial, so we review only for fundamental, prejudicial error. *Escalante*, 245 Ariz. 135, ¶ 12. We conclude the court did not fundamentally err by failing to sua sponte instruct the jury on the voluntariness of Fournier's confession.

**¶26**        As we have noted, it is undisputed that the confession was not the product of any state action. The trial court nonetheless permitted Fournier to present evidence concerning voluntariness, including by exploring whether Fournier was coerced by the jail inmate who received his written confession. But the record is devoid of any evidence of threats or other coercive activity, and Fournier was not in the same room as the other inmate at the time he delivered the letter through an opening in his cell door. Fournier cites evidence that written confessions like his are unusual, that inmates sometimes seek confessions from other inmates to help their own cases, and that his fellow inmate was muscular and "very stacked." Fournier's arguments are speculative and do not support a finding that the inmate or anyone else actually coerced Fournier into confessing.

## III. Other Jury Instructions

**¶27** Fournier raises two additional challenges to the jury instructions. For the first time on appeal, Fournier asserts the trial court improperly instructed the jury regarding manslaughter as a lesser-included offense of murder. He also asserts the court erred by instructing the jury on flight or concealment. A party is entitled to any instruction reasonably supported by the evidence. *Bolton*, 182 Ariz. at 309.

### A. Lesser-included instruction for provocation manslaughter

**¶28** The trial court instructed the jury on manslaughter as a lesser- included offense of murder as provided in *State v. LeBlanc*, 186 Ariz. 437, 438 (1996), directing the jury that it may consider the lesser offense if it either "find[s] the defendant not guilty" or "cannot agree on whether to find the defendant guilty or not guilty" of the greater offenses. The court's manslaughter instruction included theories of "reckless manslaughter" under A.R.S. § 13-1103(A)(1) and "provocation manslaughter" under § 13- 1103(A)(2).

**¶29** Fournier does not dispute that the trial court properly instructed the jury as to reckless manslaughter, but he asserts the instruction was deficient as to provocation manslaughter. Because Fournier did not object to the court's instruction at trial, we review only for fundamental error. *See Escalante*, 245 Ariz. 135, ¶ 12. Fournier bears the burden to prove the error was not only fundamental but prejudicial, such "that without the error, a reasonable jury could have plausibly and intelligently returned a different verdict." *State v. Fierro*, 254 Ariz. 35, ¶ 21 (2022) (quoting *Escalante*, 245 Ariz. 135, ¶ 31).

**¶30** In *State v. Lua*, 237 Ariz. 301, ¶ 19 (2015), our supreme court held that the lesser-included instruction provided in *LeBlanc* does not apply to provocation manslaughter. As defined in § 13-1103(A)(2), provocation manslaughter means "[c]omitting second degree murder . . . on a sudden quarrel or heat of passion resulting from adequate provocation by the victim." Because provocation manslaughter requires proof of an additional circumstance, it is not a lesser-included offense of second-degree murder. *Lua*, 237 Ariz. 301, ¶¶ 18-19. The lesser-included instruction under *LeBlanc* invites the jury to consider the lesser offense if it finds the defendant not guilty or cannot agree, but the proper instruction for provocation manslaughter requires the jury to consider whether the additional circumstance set forth in § 13-1103(A)(2) has been proven if it "find[s] the

elements of second-degree murder proven beyond a reasonable doubt." *Lua*, 237 Ariz. 301, ¶ 20 (quoting Rev. Ariz. Jury Instr. (RAJI) Stand. Crim. 11.04 (3d ed. 2011)). The trial court's instruction omitted that critical distinction.

**¶31** Notwithstanding the faulty instruction, Fournier has not proven prejudice. The evidence did not support a theory of provocation manslaughter, and he did not argue it. "Given the defendant's heavy burden to prove prejudice, it 'is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.'" *Fierro*, 254 Ariz. 35, ¶ 24 (quoting *State v. Zaragoza*, 135 Ariz. 63, 66 (1983)). A faulty instruction on a theory unsupported by the evidence and unrelated to the defense at trial is not prejudicial because it could not have led a reasonable jury to reach a different verdict. *See id.* ¶ 25 (holding the defense "was unaffected by [a] faulty instruction" because "[t]he evidence did not show, and [the defense] did not argue," a theory relevant to the faulty instruction).

**¶32** An instruction for provocation manslaughter is appropriate in a second-degree murder prosecution "when there is evidence that the homicide was committed upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim." *Lua*, 237 Ariz. 301, ¶ 20. Thus, the trial court was required to provide a provocation instruction only if that instruction was reasonably supported by the evidence. *See State v. LaGrand*, 152 Ariz. 483, 487 (1987) ("A party is entitled to an instruction on any theory reasonably supported by evidence."). "Adequate provocation" is defined by A.R.S. § 13-1101(4) as "conduct or circumstances sufficient to deprive a reasonable person of self-control."

**¶33** Here, the sole evidence of provocation was Fournier's written statement that during their argument over the $2,500 check, J.H. "grabbed his phone and said he was calling the bank and police." No matter how heated the argument, "[w]ords alone are not adequate provocation to justify reducing an intentional killing to manslaughter." *State v. Dunbar*, 249 Ariz. 37, ¶ 32 (App. 2020) (quoting *State v. Vickers*, 159 Ariz. 532, 542 (1989)). Neither J.H.'s saying he would call the police nor his grabbing his phone constituted "conduct or circumstances sufficient to deprive a reasonable person of self-control." § 13-1101(4).

**¶34** Fournier did not argue a theory of provocation manslaughter at trial. His sole defense was that he did not kill J.H. Even if Fournier had argued a theory of provocation manslaughter, the evidence would not have

supported it. Fournier's defense was therefore unaffected by the faulty instruction, and he has not demonstrated prejudice. *See Fierro*, 254 Ariz. 35, ¶ 25.

### B. Flight instruction

**¶35** Over Fournier's objection, the trial court instructed the jury that in determining guilt, it "may consider any evidence of the defendant's running away, hiding, or concealing evidence." A court may give a flight or concealment instruction if there is evidence of flight after a crime from which the jury can infer a defendant's consciousness of guilt. *State v. Solis*, 236 Ariz. 285, ¶ 7 (App. 2014). We review a court's jury instructions for abuse of discretion, viewing the evidence in the light most favorable to the proponent of the instruction. *See State v. King*, 225 Ariz. 87, ¶ 13 (2010).

**¶36** The trial court did not abuse its discretion here. The record includes evidence that Fournier shut off his existing phone number and replaced it with a new prepaid line, left the city and then the state in J.H.'s car days after his death, replaced the tires and license plate, and backed into a parking spot at a Michigan motel in a manner that made it more difficult to see the false license plate. This evidence of Fournier's flight from Arizona, including several measures that might have made his location more difficult to track, was sufficient for the jury to reasonably infer consciousness of guilt.

## IV. Exclusion of Past Check

**¶37** Finally, Fournier asserts the trial court abused its discretion by precluding him under Rule 403, Ariz. R. Evid., from presenting evidence of a legitimate check that J.H. had written to Fournier in June, several months before the October homicide. Fournier argued at trial that the older check was relevant because the failure of police to conduct a handwriting analysis on the checks went to the completeness of the investigation. The court precluded the check on the basis that it was too remote in time and there had been no allegation of any fraud in June, such that the June check was not relevant to the quality of an investigation concerning checks written in October.

**¶38** The trial court is in the best position to balance the probative value of evidence against dangers such as unfair prejudice, confusion, wasting time, or presenting cumulative evidence. *State v. Togar*, 248 Ariz. 567, ¶ 23 (App. 2020); *see* Ariz. R. Evid. 403. "We review a trial court's

determination of relevance and admissibility of evidence for an abuse of discretion." *State v. Rose*, 231 Ariz. 500, ¶ 59 (2013) (quoting *State v. Hardy*, 230 Ariz. 281, ¶ 49 (2012)). The trial court did not abuse its discretion here.

**¶39** As the trial court noted, the June check occurred months before the events at issue for trial, and Fournier conceded there had been no allegation of any fraudulent checks in that time period. Given the check's remoteness in time from the relevant allegations, its connection to the completeness of the investigation was slim. *See Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, ¶ 25 (App. 1998) ("Otherwise relevant evidence may be excluded if it is too remote in time from the proposition being proved."). Nor does Fournier adequately explain why the June check was relevant to his argument concerning the failure to conduct a handwriting analysis, an argument he made at trial independently of whether any of the checks were legitimate. In addition, other checks introduced at trial were legitimate and contained J.H.'s authentic signature. Fournier has not explained why these other checks were inadequate to his strategy at trial. The court had discretion to preclude the June check if its probative value was substantially outweighed by the dangers of wasting time or presenting cumulative evidence. *See* Ariz. R. Evid. 403.

## DISPOSITION

**¶40** We affirm Fournier's convictions and sentences.