674 P.2d 850

The STATE of Arizona, Appellee,

v.

Winfield Clarence HANSON, aka James Raymond Hudson, Appellant.

Nos. 2 CA–CR 2813, 2 CA–CR 3074–2.

Court of Appeals of Arizona, Division 2.

June 27, 1983.

Rehearing Denied Oct. 3, 1983.

Review Denied Dec. 20, 1983.

298

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Robert S. Golden, Phoenix, for appellee.

Gurubhai Singh Khalsa, Tucson, for appellant.

## OPINION

HOWARD, Chief Judge.

Appellant was convicted of eight counts of first-degree burglary, eleven counts of armed robbery, thirteen counts of kidnapping, and one count of attempted armed robbery. These offenses were committed in the course of eight separate hold-ups between August 7 and December 19, 1981, all of which occurred either at a fast-food restaurant or a motel. Appellant was apprehended in the early morning of December 19 after one of the victims, the manager of a Pizza Hut, noted his license plate number. That same morning, he confessed to all but one of the holdups. At trial, his defense was that he did commit the Pizza Hut robbery, but was innocent of the other charges and had confessed to them because of confusion, exhaustion, concern for his wife, and implied threats and promises by the police.

Appellant raises several issues. We will first address the one that necessitates reversal of one of the counts. We disagree with the rest of his contentions and affirm in all other respects.

Appellant contends the trial court erred when it refused to give his requested instruction on renunciation. We agree, and reverse the conviction for attempted armed robbery.

Appellant attempted to rob the Ambassador Inn on September 21, 1981. He entered the building, pointed his gun at the front desk clerk, and ordered her to get down behind the cash register. At that point, another person walked in. Appellant ordered him to get on the floor also. Appellant tried to open the cash register and the safety deposit boxes, but could not. He then said he was going outside and would be right back, and left.

When asked about the Ambassador Inn robbery in his taped confession, appellant said, "I didn't want to hurt anybody so I left. They refused to cooperate. I wasn't about to hurt anybody so I just left . . . . the girl was so frightened, and I didn't want to do anything to upset her any more."

The next robbery with which appellant was charged occurred on October 8.

A.R.S. § 13–1005(A) provides a defense to a charge of attempted robbery when the defendant made a voluntary and complete renunciation of his criminal intent and made a reasonable effort to prevent the result which was the object of the attempt. Section 13–1005(C) provides that a renunciation is not complete and voluntary if it is motivated either (1) by a belief that the circumstances make the crime more difficult or increase the chance of being apprehended, or (2) by a decision to postpone the conduct to another time or victim.

A defendant is entitled to an instruction on any theory of the case reasonably supported by the evidence. *State v. Axley,* 132 Ariz. 383, 646 P.2d 268 (1982). Here, there was evidence from which the jury could have decided that appellant abandoned the attempted robbery because the victims were so upset and that he was not motivated by the factors listed in § 13–1005(C). Therefore, because of the failure to give the requested instruction, the attempted armed robbery conviction must be reversed.

Appellant argues that he was denied his right of self-representation when the trial court did not allow him to proceed pro se. After the voluntariness hearing, but before the jury was empanelled, appellant's counsel informed the court that appellant wished to discharge him. The trial court judge invited appellant to address her directly on this matter and appellant explained his concerns at length, referring to motions he felt the attorney should have made on his behalf, their difference of opinion as to an offered plea agreement, the attorney's case load, and his competence at the voluntariness hearing. Appellant's attorney then moved to withdraw from the case, stating:

"I would . . . request the Court to treat Mr. Hanson's motion as, one, to either have a new attorney, or perhaps if he wants to proceed in proper person and represent himself with me as advisory counsel."

The court then denied the motions for new counsel and to withdraw and explained to appellant that many of the issues he felt his counsel had ignored were properly raised by cross-examination rather than by pretrial motion.

■ The right of a defendant to act as his own lawyer was established in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Because the courts must protect a defendant's right to be represented by counsel, a demand to proceed pro se should be unequivocal. Otherwise, a defendant can claim a violation of his rights on appeal whether he defended himself or had an attorney. In *Meeks v. Craven,* 482 F.2d 465 (9th Cir.1973), the court stated:

"An 'unequivocal' demand to proceed *pro se* should be, at the very least, sufficiently clear that if it is granted the defendant should not be able to turn about and urge that he was improperly denied counsel." 482 F.2d at 467.

■ Here, there was no indication to the trial court that appellant wished to proceed pro se. While appellant's attorney suggested that as an option, appellant himself did not specifically state what he wanted the court to do if his attorney were allowed to withdraw. The tenor of his statement, however, was that he wanted an attorney outside the public defender's office. He said, "I don't know the law when I read it; I don't understand half of it. I felt with outside representation I might have a better chance of finding myself innocent on these ones I did not do." His statement falls far short of an unequivocal demand.

■ The question then arises whether the trial court should have informed him of his right to represent himself. Appellant argues that he could not have made a knowing, voluntary, and intelligent waiver of this right. The cases he cites, however, all deal with a defendant's waiver of the right to be represented by counsel, not the right to proceed pro se. The two rights are different in nature. It's neither necessary nor appropriate to impose the same standard for establishing their waiver. In *People v. Salazar,* 74 Cal.App.3d 875, 141 Cal. Rptr. 753 (1977), the difference between the two rights is described as follows:

"Unlike the right to the *assistance* of counsel, the right to dispense with such assistance and to represent oneself is guaranteed not because it is essential to a fair trial but because the defendant has a personal right to be a fool. This right is afforded the defendant *despite* the fact that its exercise will almost surely result in detriment to both the defendant and the administration of justice." (Emphasis in original) 141 Cal.Rptr. at 761.

In *Salazar,* the defendant not only strenuously protested against continued representation by the appointed attorney, but also insisted "that he should be permitted to run his own life." The court held that the trial court had no duty to advise him of his right to represent himself, adding that it would in fact be unwise to suggest such an alternative.

■ In *Russell v. State,* 270 Ind. 55, 383 N.E.2d 309 (1978), the Indiana Supreme Court vacated an opinion of its Court of Appeals that had proposed guidelines for enforcing *Faretta,* including advisement of the right of self-representation at arraignment and hearings when the defendant expressed dissatisfaction with his attorney. It held that such procedures are not only not required under the Constitution, but are not preferred. Self-representation does not further any fair trial interests and is protected solely out of respect for the defendant's personal autonomy.

We agree with both *Salazar* and *Russell.* The trial court had no obligation to advise appellant of his right to proceed pro se. Because he did not make an unequivocal and timely assertion of this right, it is deemed to have been voluntarily waived.

■ Appellant's next argument is that his right to a fair trial was denied because

his alias was referred to several times during the trial. No objection was made below, so this issue was waived. *State v. Hunt,* 118 Ariz. 431, 577 P.2d 717 (1978). But even if an objection had been raised, evidence of the alias was properly admitted. Because evidence of an alias can be prejudicial, it should not be admitted where it serves no useful purpose. *State v. Randall,* 8 Ariz.App. 72, 443 P.2d 434 (1968). Here, however, appellant had gone by the name James Hudson for several years. His car, through which the police traced him, was registered to James Hudson. That was the name the police used when they went to his house to question him. Thus, the alias was a relevant part of his identification and was necessary to present the complete story to the jury.

Appellant argues that his confession should have been suppressed because it was not voluntary. He testified at the voluntariness hearing, first, that he was so groggy from lack of sleep and so worried about his wife that he could not think clearly and was especially susceptible to psychological pressure, and, second, that the police impliedly threatened to treat his wife as an accomplice if he did not confess. In addition, Detective Sanders told appellant that he would try to get someone to come help his wife and there would be no additional prison time imposed for any robberies beyond the first three.

■ The state has the burden of showing by a preponderance of the evidence that a confession was not involuntary. However, the trial court's decision will not be disturbed unless there was clear and manifest error. *State v. Tison,* 129 Ariz. 526, 633 P.2d 335 (1981), cert. den. 454 U.S. 848, 102 S.Ct. 167, 70 L.Ed.2d 136. To satisfy the requirements of due process, the statements must be the product of a rational intellect and a free will. *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

The police officers who were present when appellant was interrogated at his home and Detective Sanders, who taped the confession, testified at the voluntariness hearing that appellant appeared to be wide awake and free from the influence of intoxicants and was cooperative. The transcript of the confession shows that appellant discussed the robberies freely and coherently with Detective Sanders. While he had trouble remembering some details because he was, as he said, groggy, he was quite aware of the consequences of what he was saying and willing to confess.

■ A confession is not considered voluntary if it was obtained by any promises, either direct or implied. *State v. Burr,* 126 Ariz. 338, 615 P.2d 635 (1980). While appellant and his wife testified that the police had threatened to take her down to jail if he did not confess, and promised to send someone to help her if he did, the police officers testified that no such threat was made and that the offer of help was not contingent on appellant confessing. It is for the trial court to resolve conflicting testimony. As for Detective Sanders' statement, which he acknowledged making, that no extra prison time would be imposed for more than three offenses, this also did not imply "a benefit ... in exchange for information." *State v. Burr,* supra, 126 Ariz. at 340, 615 P.2d 635. Appellant understood this to be the case, stating to Detective Sanders in the confession, "You didn't promise good, bad, or indifferent, you can't; you're in no position to promise anything ...." There was, therefore, little or no evidence that appellant was subjected to psychological pressure or was especially susceptible to it. The trial court's decision that the confession was voluntary will be upheld.

■ Appellant also argues that his physical condition when he made the confession did not allow him to make a knowing, intelligent and voluntary waiver of his right to have counsel present. This question was not raised below. Moreover, the record shows ample evidence to meet the state's heavy burden for demonstrating waiver.

■ Once he has received a Miranda warning, "[a]n express statement that the

individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver." *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694, 724 (1966). The record shows that appellant was advised of his rights at least twice and acknowledged that he understood them and was willing to make a statement. At no point did he request that the interrogation stop or that he have counsel present. At the end of the taped confession, Detective Sanders asked appellant if he at any time asked for his attorney to be present. Appellant said he had not, adding "I didn't see what use it would do, one way or the other. He'd probably tell me to keep my mouth shut." This clearly constitutes a knowing, intelligent and voluntary waiver.

■ Appellant contends the state failed to prove lack of consent, a necessary element of robbery and kidnapping, as to two victims who were not available as witnesses at the trial. Russanna Emery, who did not testify, was working at a Pizza Inn with Kathleen Chade on the night of the robbery. Ms. Chade testified that appellant pointed a gun at both of them, made them walk to the back of the restaurant, and tied their hands with black electrician's tape. Similarly, Bill Sexton was working with Shivaun Brady at another Pizza Inn when it was robbed. Ms. Brady testified that they were both held at gunpoint, she was forced to tie Sexton's hands behind his back, and appellant had Sexton walk into the men's bathroom. This was sufficient evidence for the jury's conclusion that Ms. Emery and Mr. Sexton did not consent to appellant's actions.

■ Appellant also argues that he did not receive a fair trial because the trial court denied his motion for a severance. He contends he was prejudiced by having to defend all 33 counts in front of the same jury. Under Rule 13.4(c), Arizona Rules of Criminal Procedure, 17 A.R.S., appellant waived this ground for appeal by not renewing his motion at or before the close of evidence. In addition, all eight holdups followed an extremely similar pattern. All of the holdups occurred approximately between 10 p.m. and 1 a.m., at either a fast-food restaurant or a motel. In all but the attempted robbery at the Ambassador Inn, he had the victims go to a back room where their hands were taped with either adhesive tape or electrician's tape. In five of the holdups he used a fake English or Scottish accent. Victims of six of the holdups testified that his hair was dark, and victims of four of the holdups identified a dark wig as having been worn by the robber. Therefore, following *State v. Tipton*, 119 Ariz. 386, 581 P.2d 231 (1978), there was evidence that the offenses followed a common scheme or plan and so were capable of being joined under Rule 13.3(a)(3). Because the "common scheme or plan" of this rule is identical with that of the evidentiary rule allowing the admission of other bad acts of the defendant, if the holdups had been tried separately, evidence of the other holdups could have been admitted at each trial. Therefore, appellant was no more prejudiced by the joinder of the offenses than if they had been tried separately.

Appellant claims the trial court improperly applied A.R.S. § 13–604(H) in determining his sentence. That statute provides:

"Convictions for two or more offenses not committed on the same occasion but consolidated for trial purposes, may, at the discretion of the state, be counted as prior convictions for purposes of this section. Convictions for two or more offenses committed on the same occasion shall be counted as only one conviction for purposes of this section."

The trial court considered the offenses in the order in which they had been committed in applying this statute. Appellant urges they should have been considered in the order in which the jury reached its verdicts.

■ In *State v. Rybolt*, 133 Ariz. 276, 650 P.2d 1258 (App.1982), the court held that it was not necessary under this statute that the offense treated as a prior conviction have actually occurred first. It upheld the trial court's use of an evening offense to enhance the punishment for an offense

that had been committed in the morning. The converse is also permissible under this statute. As the court in *Rybolt* reasoned, the purpose of this statute is to impose stronger sanctions on dangerous and repetitive offenders. Its only limitation is that it will not be applied to "spree" offenses. The trial court's decision here, to consider the offenses in the order in which they had been committed, is a rational and non-arbitrary way to apply A.R.S. § 13–604(H).

Appellant also claims that he was denied effective assistance of counsel. His attorney failed to raise several objections at trial. Those which we address above were, as we have shown, without merit. Therefore, appellant's trial attorney cannot be faulted for not having raised them. The other issues that appellant's attorney failed to raise require a closer examination as to what is required of counsel under the new standard set in *State v. Watson*, 134 Ariz. 1, 653 P.2d 351 (1982).

Six of the twelve victims who identified appellant at the trial had previously been shown a photographic lineup by the police that included appellant's picture. On the first day of trial, appellant's attorney requested a Dessureault hearing on his motion to suppress the witnesses' in-court identification as having been tainted by the photo lineups. A hearing was held for the two witnesses available that day. Appellant's counsel said that he would seek a Dessureault hearing for the other witnesses later, but he never did.

The facts here are similar to those which compelled the court in *Watson* to hold that the defendant had been denied effective assistance of counsel. Watson's attorney had declined to join in the Dessureault hearing held for Watson's co-defendant, stating that he would move for a hearing at a later date, which he failed to do. *Watson* differs from the instant case in two important respects, however. First, there were Dessureault hearings here for two of the witnesses. The trial court had an opportunity at that time to rule on the suggestiveness of both of the photographic displays used by the police and found that they were

not improper. Our review of the displays confirms that conclusion. Second, each of the witnesses testified unequivocally as to his or her memory of appellant at the time of the robbery. There is no indication, as there was in *Watson*, that appellant might have prevailed in a Dessureault hearing.

■ *Watson* states that minimal standards of professional competence require an attorney to pursue a motion when the facts raise an issue as to such matters as the voluntariness of a statement, legality of a search, or the suggestiveness of an identification procedure. It does not, however, require that these motions be made in every single case. Nor does it create a standard that would allow defense counsel to inject error by strategically failing to raise them when the defendant is not likely to prevail. The trial attorney must retain some discretion to determine when a motion would be entirely fruitless.

■ Here, the photo arrays were approved by the trial court; one of the witnesses for whom there was a *Dessureault* hearing failed to identify appellant in court, weakening the argument that the police procedure had been too suggestive; appellant's counsel attempted to raise a question in the jury's minds as to the source of the in-court identifications through cross-examination. We cannot say that his decision not to request the other Dessureault hearings fell below the standard of minimal competence.

■ Appellant argues that he was denied a speedy trial within the time limits required under Rule 8, Arizona Rules of Criminal Procedure, 17 A.R.S. (He does not claim that his constitutional right to a speedy trial was violated.) Because his attorney failed to bring this to the court's attention or move to dismiss, the issue has been waived. *State v. Parker*, 116 Ariz. 3, 567 P.2d 319 (1977). But appellant also argues that this failure on the part of his attorney denied him effective assistance of counsel. We do not agree, since the record does not show that such a motion would have been successful. Furthermore, *State*

*v. Watson,* supra, specifies that ineffective assistance of counsel does not warrant reversal where counsel's error is not harmful. Appellant does not contend that he was prejudiced in any way by the, at most, 51-day extension past the 90-day limit. In fact, one of the continuances was sought by appellant's attorney, who needed more time to prepare. This suggests that the earlier extension due to a change of judge could not but have helped appellant by allowing his attorney further preparation time.

██ Finally, appellant argues his attorney failed to meet the standard of minimal competence in his closing argument. It is not necessary for counsel to discuss the concepts of presumption of innocence and burden of proof in the closing argument when the trial court judge will do so in instructing the jury. Contrary to appellant's contention, the references to "crime waves" and "bad guys" show that his attorney did understand the nature of the defense, which was to admit candidly to the last holdup and claim the police were trying to pin the other charges on him.

██ Almost four months after the sentence was imposed in this case, it was brought to the trial court's attention that the minute entry for the sentencing hearing designated all 33 counts as non-repetitive offenses. As non-repetitive offenses, the sentences imposed were illegal. There was a hearing on this matter with appellant present and the trial court ordered that the word "repetitive" be substituted for the word "non-repetitive" as to all the counts except the five that arose out of the first hold-up. Appellant contends that the trial court judge acted improperly. We do not agree.

Appellant first argues that the trial court had lost all jurisdiction over this case once his notice of appeal had been timely and properly filed. *State v. Ferguson,* 119 Ariz. 55, 579 P.2d 559 (1978). Rule 24.4, Arizona Rules of Criminal Procedure, 17 A.R.S., however, allows the court to correct clerical mistakes in the record "arising from oversight or omission" at any time.

The transcript of the sentencing hearing shows that the trial court judge did not specify whether any of the offenses were repetitive or non-repetitive. 8A Moore's Federal Practice ¶ 36.02 at 36–2 states, "A clerical mistake involves a failure to record accurately a statement made or action taken by the court or one of the parties." The clerk's interjection of the word "non-repetitive" was thus clearly a clerical error and the trial court was correct in ordering that the word "non-repetitive" be deleted. But did it also have jurisdiction to add the word "repetitive"? Rule 26.10(a), Arizona Rules of Criminal Procedure, 17 A.R.S., directs:

"In pronouncing judgment, the court shall set forth ... a determination of whether the offense falls in the categories of dangerous, non-dangerous, and repetitive or non-repetitive."

While the trial court below failed to comply with this rule, the record clearly reflects that it was treating the first offenses committed by appellant as priors to enhance the punishment on the subsequent counts, and that it informed appellant it was doing so. The lack of ambiguity in the court's action is indicated by the fact that this issue was not raised by anyone present at the sentencing hearing but by the correctional records administrator. This is not a case where the trial court failed to express its true intention; its intent is clearly expressed in the record, but not precisely in the form dictated by Rule 26.10. See *State v. Johnson,* 108 Ariz. 116, 493 P.2d 498 (1972). The minute entry could be corrected to designate that the offenses were repetitive.

██ Appellant also contends that even if the trial court had jurisdiction to correct the minute entry, double jeopardy protects him from a subsequent increase in punishment. See *United States v. Best,* 571 F.2d 484 (9th Cir.1978). This argument fails because the trial court was simply correcting the minute entry so that it would be an accurate record of the judgment and sentence. Rule 26.16, Arizona Rules of Criminal Procedure, 17 A.R.S., provides that a judgment and sentence are complete and valid when orally pronounced. Where there is a discrepancy between the oral sentence

and the written judgment, the oral pronouncement of sentence controls. See *United States v. Munoz-Dela Rosa,* 495 F.2d 253 (9th Cir.1974); *State v. Johnson,* supra. Therefore, the action of the trial court did not modify appellant's sentence but only corrected the record.

In reviewing the record, we note that the minute entry is also in error in stating that appellant was sentenced to 28 years on count 25, one of the burglary counts. The sentence actually imposed by the trial court was 20 years. The record is corrected to show that appellant's sentence on Count 25 is 20 years' imprisonment, to run concurrently with the other sentences. The record is also corrected to show that appellant was sentenced to imprisonment rather than to the Department of Corrections, as stated in the minute entry. See *State v. Gutierrez,* 130 Ariz. 148, 634 P.2d 960 (1981).

The conviction for attempted armed robbery is reversed and the sentence is modified to correct the above errors. The judgment is affirmed in every other respect.

HATHAWAY and BIRDSALL, JJ., concur.