944 P.2d 57

STATE of Arizona, Appellee.

v.

Graham Saunders HENRY, Appellant.

No. CR–95–0098–AP.

Supreme Court of Arizona,
En Banc.

Aug. 7, 1997.

544

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, R. Wayne Ford, Assistant Attorney General, Pheonix, for Appellee.

James J. Bellanger, Coppersmith and Gordon, PLC Denise I. Young, Arizona Capital Representation Project, Phoenix, for Appellant.

## OPINION

ZLAKET, Chief Justice.

On December 9, 1987, a jury convicted Graham Saunders Henry of first degree murder, kidnapping, theft, and robbery. The trial court sentenced him to death on the murder conviction and to terms of imprisonment for his other crimes. On direct appeal, we affirmed the non-capital convictions and sentences. With respect to the death sentence, however, we struck one aggravating factor and remanded for resentencing. *State v. Henry*, 176 Ariz. 569, 863 P.2d 861 (1993).

The trial judge thereafter conducted a new sentencing hearing and reimposed the death penalty. This automatic appeal followed. We have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3); A.R.S. § 13–4031; and Rule 31.2(b), Ariz.R.Crim.P.

### I. Facts and Procedural History

The facts underlying defendant's convictions are recited in our earlier opinion. *See Henry*, 176 Ariz. at 573–75, 863 P.2d at 865–67. The focus here is limited to events that have transpired since that decision. On September 13, 1994, a hearing was held on a defense motion to change the sentencing judge, who had also presided over defendant's trial. The motion was ultimately denied. At the same proceeding, the hearing judge additionally rejected defendant's request to remove his attorney, Peter Rosales, and appoint new counsel.

Rosales subsequently left the public defender's office and was replaced by Gerald Gavin. After approximately five months, Gavin filed a motion to withdraw. The judge denied it, noting that defendant had already fired or forced to withdraw numerous qualified lawyers.

The resentencing hearing occurred two days later. Before any evidence was offered, defendant made a conditional motion to proceed *in propria persona*. When the court refused to accept his conditions, defendant expressly withdrew his request for self-representation. The hearing proceeded, and the judge resentenced him to death.

### II. Hearing on Motion to Change Judge For Cause

#### A. Right to Testify

At the hearing conducted pursuant to Rule 10.1, Ariz.R.Crim.P., attorney Rosales put the trial judge on the stand as his only witness. Thereafter, the court asked the lawyer whether he wished to offer any further evidence, and the following exchange ensued:

Mr. Rosales: No, Your Honor.

Mr. Henry: Yes, he does. I wish to testify, Your Honor. Don't I have a legal right to testify?

The Court: Mr. Rosales, do you wish to call him?

Mr. Rosales: No, Your Honor.

The court then called a recess, reconvening only for closing arguments.

Defendant asserts that the hearing judge violated his constitutional right to testify and that what he had to say was "necessary to the court fully understanding the factual basis for the motion to recuse." He claims that, given the opportunity, he could have testified to the trial judge's "refusal—as well as his voice tone, facial expressions and general demeanor at that time and throughout the proceedings in this case—to view photographs." The photos supposedly would have shown the absence of defendant's footprints crossing a roadway at the crime scene, thereby undermining the state's claim that he was a major participant in the offense, *see Tison v. Arizona*, 481 U.S. 137, 158, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127 (1987), and supporting his charge of ineffective assistance of counsel.

The defense has failed to provide any support in the record for its underlying claims. No specific evidence of the alleged judicial misconduct is referenced in the transcript, nor has our independent review disclosed any. The photographs have not been identified either by exhibit number or in any other appropriate manner, nor are they attached to the briefs. We possess nothing more than appellate counsel's exceedingly general description of what the defendant "could" have said if permitted to testify. Under such circumstances, we must conclude

that the trial court's actions either did not occur as described or were justified. *See State v. Lavers,* 168 Ariz. 376, 399, 814 P.2d 333, 356 (1991).

 A trial judge is presumed to be free from bias. *State v. Perkins,* 141 Ariz. 278, 286, 686 P.2d 1248, 1256 (1984), *overruled on other grounds by State v. Noble,* 152 Ariz. 284, 731 P.2d 1228 (1987). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555–56, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994); *see also Perkins,* 141 Ariz. at 286, 686 P.2d at 1256. The trial court's refusal to examine photographs, if true, would not alone demonstrate such profound antagonism. *See State v. Curry,* 187 Ariz. 623, 631, 931 P.2d 1133, 1141 (App.1996)(disagreements over rulings insufficient to support recusal). Additionally, defendant's subjective observations of the judge's tone of voice and expressions would add little, if anything, to his claim. *See Liteky,* 510 U.S. at 555, 114 S.Ct. at 1157 ("*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women ... sometimes display."). Thus, even assuming defendant's unsubstantiated claims are accurate and that he had a right to testify at this judicial disqualification proceeding, we find no prejudice. *See Harrington v. California,* 395 U.S. 250, 251–54, 89 S.Ct. 1726, 1727–28, 23 L.Ed.2d 284 (1969) (confrontation clause violation held harmless error); *State v. Canaday,* 117 Ariz. 572, 574–75, 574 P.2d 60, 62–63 (App.1977) (applying harmless error analysis to 6th Amendment claim).

### B. Right to Counsel and Self–Representation

Defendant filed a motion to substitute a new lawyer for Rosales, which was heard on the same day as the foregoing request to remove the trial judge. Following argument, the court denied it, finding that defendant was merely intent on usurping counsel's role as strategist for the defense. The judge then advised defendant that he had to choose between keeping his attorney and representing himself, but defendant refused to respond unless the court divulged whether it would grant him additional time to prepare. The judge declined to indicate in advance how he would treat this request and proceeded with the removal hearing as though defendant had not waived his right to a lawyer.

### 1. Denial of New Counsel Motion

Defendant first argues that the judge should have granted his motion to substitute counsel because he was involved in an irreconcilable conflict with his attorney. Were it not for that conflict, defendant asserts, he would have called additional witnesses and introduced further evidence to show that he was not death eligible and to bolster the proffered mitigation. Although defendant identifies several of the witnesses, he fails to provide us with the substance of their testimony.

 Accuseds have a Sixth Amendment right to representation by competent counsel. *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975); *State v. Bible,* 175 Ariz. 549, 591, 858 P.2d 1152, 1194 (1993); Ariz. Const. art. II, § 24. Those afforded representation, however, are entitled neither to attorneys of their own choosing, *State v. DeLuna,* 110 Ariz. 497, 500, 520 P.2d 1121, 1124 (1974), nor to a meaningful relationship with them. *Bible,* 175 Ariz. at 591, 858 P.2d at 1194. When ruling on a motion to substitute counsel, courts should keep in mind "the rights and interest of the defendant ... tempered by exigencies of judicial economy." *State v. LaGrand,* 152 Ariz. 483, 486, 733 P.2d 1066, 1069 (1987). A proper analysis includes consideration of the following:

> Whether an irreconcilable conflict exists between counsel and the accused, and whether new counsel would be confronted with the same conflict; the timing of the motion; inconvenience to witnesses; the time period already elapsed between the alleged offense and trial; the proclivity of

the defendant to change counsel; and quality of counsel.

*Id.* at 486–87, 733 P.2d at 1069–70. Unlike other factors, the presence of a genuine irreconcilable conflict *requires* the appointment of new counsel. *Bible,* 175 Ariz. at 591, 858 P.2d at 1194.

■ According to defendant, Rosales rarely communicated with him prior to the removal hearing, failed to adequately prepare, and had been improperly influenced by one of his former attorneys. This, he asserts, created an irreconcilable conflict. We find that the argument lacks support in the record. There is ample evidence that the "conflict" in question amounted to nothing more than a disagreement over appropriate defense strategies. Although tactical decisions may raise concerns about attorney competence, such matters are more properly analyzed in post-conviction relief proceedings. *See State v. Mata,* 185 Ariz. 319, 335, 916 P.2d 1035, 1051 (1996); Ariz.R.Crim.P. 32.

■ Furthermore, this was not the first time defendant had expressed dissatisfaction with his lawyers. His proclivity to change counsel lends strong support to the judge's decision. *See LaGrand,* 152 Ariz. at 486, 733 P.2d at 1069. Before trial, the court granted two defense motions to substitute counsel, one motion for self-representation, and another to withdraw the waiver of defendant's right to an attorney. Between the time of his conviction and the motion in question, defendant moved either for new counsel or self-representation five more times. When a defendant has repeatedly claimed "irreconcilable conflict" with a series of attorneys, the court may deny a motion for yet another lawyer where the orderly administration of justice so requires. *See State v. Lee,* 142 Ariz. 210, 220, 689 P.2d 153, 163 (1984). Under the circumstances of this case, we cannot say that the court abused its discretion.

### 2. Denial of Right to Self–Representation

Defendant next argues that the hearing judge erroneously denied his motion to continue, thereby precluding him from meaningfully exercising his right to self-representation at the removal proceeding. The transcript reflects that defendant was first permitted to fully articulate his complaints regarding Rosales. Thereafter, a lengthy colloquy ensued, during which the court repeatedly gave defendant the opportunity to choose between representation by counsel and self-representation. Defendant continued to argue his position, but refused to make a choice. The discussion ended in the following fashion:

The Court: Mr. Henry, maybe I missed this, but did you choose or did you not choose?

Mr. Henry: I am objecting to being forced to choose.

The Court: I have heard your objection now for about five times. I have overruled your objection. It is well documented on the record. Now you need to choose.

Mr. Henry: Will Your Honor give me a reasonable continuance to try to work with Mr. Rosales and Mr. Freeman in some capacity to get the witnesses and the documents and records that I feel I need for a defense if I agree to relinquish my right to counsel?

The Court: Mr. Rosales, if you are counsel on this case, are you ready to proceed today?

Mr. Rosales: I am ready to proceed today, Your Honor.

The Court: Okay. The answer is no.

Mr. Henry: Which means if I take over my own defense, you still won't give me a continuance?

The Court: That's not what I said. You need to choose.

Mr. Henry: Well, I object, Your Honor, because I am at least entitled to know whether you'll give me adequate time to prepare my own defense in some fashion.

The Court: All right. Thank you, Mr. Henry. At this point I am going to assume that you're ready to proceed with Mr. Rosales as your counsel.

Mr. Henry: No I am not, Your Honor. I don't believe I have had a full and— opportunity to litigate the issue about his impropriety as counsel.

The Court: Thank you. Your objections are noted for the record. We are then going to take up the Motion For Change of Judge.

■■■■ A defendant has a constitutionally protected right to proceed without counsel. *Faretta,* 422 U.S. 806, 95 S.Ct. 2525. In order to successfully invoke this right, however, the accused must make an unequivocal request to represent himself. *State v. Rickman,* 148 Ariz. 499, 503, 715 P.2d 752, 756 (1986). If timely, the request ordinarily should be granted, *see State v. De Nistor,* 143 Ariz. 407, 412, 694 P.2d 237, 242 (1985), provided it is made knowingly, intelligently, and voluntarily. *Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981).

■■ The "unequivocal request" requirement serves two purposes. First, it acts as a safety net, ensuring that a defendant does not inadvertently waive counsel while thinking aloud about the benefits and pitfalls of self-representation. *Adams v. Carroll,* 875 F.2d 1441, 1444 (9th Cir.1989). Second, the requirement prevents a defendant from "taking advantage of the mutual exclusivity of the rights to counsel and self-representation." *Id.* If the court were to permit self-representation on an ambiguous request, a defendant might later be able to claim that the right to counsel was improperly denied. *See State v. Hanson,* 138 Ariz. 296, 300, 674 P.2d 850, 854 (App.1983)(citing *Meeks v. Craven,* 482 F.2d 465, 467 (9th Cir.1973)).

■■ In the present case, defendant never made an unequivocal request to proceed *in propria persona.* The closest he came was when he asked, "[w]ill your Honor give me a reasonable continuance to try to work with Mr. Rosales and Mr. Freeman in some capacity to get the witnesses and the documents and records that I feel I need for a defense if I agree to relinquish my right to counsel?" We believe this statement is more akin to "thinking aloud" than to making a request. At best, defendant was negotiating with the court. Had the judge responded affirmatively, defendant still would not have been committed to waiving his right to a lawyer. Moreover, if the court had permitted self-representation at this point in their

colloquy, defendant might later have had a compelling argument that he never made a genuine waiver of counsel. There was no error.

## III. Right to Counsel at Resentencing Hearing

Two days before the resentencing hearing, Gavin moved to withdraw, submitting as an exhibit a motion for new counsel written by defendant. After the lawyer argued his motion, the following exchange occurred:

Defendant: May I respond?

The Court: No, you may not. Not yet. Mr. Zack, what is the State's position?

Mr. Zack: Your Honor, the State, of course, traditionally takes no position concerning who or how a defendant is represented. The State would point out it is obvious that Mr. Henry has engaged in these same tactics with several lawyers who have been appointed for him. There is no lawyer who the Court could appoint that would not have the same problems as Mr. Gavin or any other lawyer. It would appear certainly there is two—

Defendant: Objection.

The Court: Mr. Henry, Mr. Henry, you are not representing yourself. That option may become available to you but you do not have the right to argue this motion. I am aware that you want to fire Mr. Gavin. Proceed, Mr. Zack.

Defendant: I object to the State being made a party to this argument.

The Court: Mr. Henry, if you want to be present at this hearing, please refrain from interrupting. Go ahead, Mr. Zack.

Mr. Zack: My point is the Defendant's intent for making these accusations against all his lawyers apparently is to delay the proceedings and build in an error issue on appeal and, again, we have gone through this for over a year now. It is the State's position that we want to get the Defendant resentenced and would desire to do that this Thursday and get this case moving. Beyond that the State I don't believe can get

involved in the representation of the Defendant.

The Court: All right. Mr. Gavin, anything further?

Mr. Gavin: Just a reminder. Mr. Henry has put my bar license at risk. I think when that happens there is a definite conflict. Given the other exhibits I filed I would ask the Court to let me off for the reasons already cited.

The Court: Well, we have reached the point in this case that I anticipated that we would reach at some point; the only question being how long it would take us to get here. It is the same point that we reached with every other attorney that has ever represented the Defendant in this case.

I can certainly appreciate the dilemma that Mr. Gavin is in. My concern is that I feel deep down in my heart that no matter who I appoint to represent the Defendant in this case, we will be having an identical hearing at some point down the road and I say that just because I am aware of the people that have been appointed to represent Defendant in the past. Some of them probably are not among the greatest trial attorneys that I have ever seen. Some of them are, in my opinion, cream of the crop that is available around here.

And I am just not willing to give the Defendant the right to get a new attorney any time that he wants simply by filing a bar complaint or threatening to file a bar complaint. And I am just absolutely convinced that if I grant this request, we are just guaranteeing that we are going to have this same conversation with some other lawyer somewhere down the line.

Defendant argues that the trial court's failure to inquire into why [he] was seeking substitute counsel and ... to determine the nature and extent of the conflict between Mr. Henry and his counsel ran afoul of the Sixth Amendment to the United States Constitution and Ariz. Const., art. 2, §§ 4, 8, 13, 15, and 24...." We disagree. Further inquiry was unnecessary because the court had already amassed sufficient information on which to base its decision. Prior to the hearing, the judge had reviewed defendant's *pro per* motion for new counsel, which detailed the nature and extent of the "conflict." That pleading thoroughly set forth defendant's contentions that Gavin refused to acquire mitigation evidence, that he was too busy to prepare an adequate defense, and that he was improperly influenced by one of his predecessors. We note the striking similarity between these claims and those against Rosales. The merits of these charges, however, are not properly before us, since they would appropriately be the subject of post-conviction relief proceedings pursuant to Rule 32, Ariz.R.Crim.P.

 Defendant also contends that an irreconcilable conflict arose after he filed a bar complaint against his counsel. Again, we cannot agree. "As a matter of public policy, a defendant's filing of a bar complaint against his attorney should not mandate removal of that attorney." *State v. Michael,* 161 Ariz. 382, 385, 778 P.2d 1278, 1281 (App. 1989). A rule to the contrary would encourage the filing of such complaints solely for purposes of delay.

Defendant's penchant for changing counsel once more reinforces the court's ruling. He was represented by six different attorneys before his second petition for review to this court. In all, he moved to substitute counsel ten separate times. Although a defendant is entitled to competent counsel, we agree that the trial court need not have embarked on "the search for the ideal Graham Henry attorney."

## IV. Rights to Self-representation, Compulsory Process, Confrontation, and Due Process

Defendant allegedly filed a motion to proceed *in propria persona* on the same day that his motion for new counsel was denied. The court never received the motion, so defendant renewed it orally at the resentencing hearing. He argued that in order to adequately represent himself he needed (1) a three to four week continuance; (2) the prosecutor's assistance in contacting and securing

witnesses named in his list of mitigating factors; (3) access to the state's documentary and photographic evidence; and (4) advisory counsel to help prepare for resentencing. The judge denied each request, stating "I am simply not willing to allow you to come in on the very beginning of this hearing and cause it to be delayed...." He then asked defendant if he wanted to go forward *in propria persona.* Defendant declined and now argues that the court deprived him of his right to self-representation by denying him the time and resources necessary to prepare an adequate defense.

■ A death-eligible defendant may represent himself at sentencing. *Henry,* 176 Ariz. at 585, 863 P.2d at 877. Here, however, defendant again failed to make an unequivocal request. *See State v. Rickman,* 148 Ariz. 499, 503, 715 P.2d 752, 756 (1986). As with the removal hearing, we cannot conclude from the record that defendant would have been committed to representing himself had the court granted his conditions. The unequivocality requirement was designed to guard against such ambiguity. *See State v. Hanson,* 138 Ariz. 296, 300, 674 P.2d 850, 854 (App.1983).

■ In any event, we would uphold the court's ruling even if defendant had properly invoked this right. Motions for self-representation must be balanced against the "government's right to a 'fair trial conducted in a judicious, orderly fashion....'" *State v. De Nistor,* 143 Ariz. 407, 412, 694 P.2d 237, 242 (1985) (citation omitted). In this case, defendant appears to have abused the protections afforded to accuseds by his repeated attempts to manufacture error and delay the proceedings. The record is replete with his frequent interruptions, lengthy digressions, and repeated requests for substitute counsel or self-representation. Given this history and the fact that defendant had a lawyer present who announced that he was ready for the hearing, there was no need for further delay.

■ Defendant further asserts that the court violated his rights to compulsory process, confrontation, and due process by preventing him from obtaining witnesses and materials needed for the hearing. These claims are equally meritless. He was not entitled to hybrid representation, *Rickman,* 148 Ariz. at 503, 715 P.2d at 756, and he was represented by counsel.

## V. Physical Restraints

At the resentencing hearing, the judge required defendant to wear shackles, handcuffs, and a shock belt. Defendant contends that this was an abuse of discretion because he had never disrupted any proceedings. He also claims that the shock belt, allegedly capable of rendering him unconscious, might have impaired his mental faculties to such an extent that his testimony was adversely affected.

■ The imposition of security measures is within the sound discretion of the trial judge. *State v. Stewart,* 139 Ariz. 50, 54, 676 P.2d 1108, 1112 (1984). The record, however, must provide support for the use of such restraints. *State v. Bracy,* 145 Ariz. 520, 532, 703 P.2d 464, 476 (1985). Factors to be considered include past convictions for crimes of violence as well as prior escapes. *See id.* In this case, defendant's criminal history justified the security devices. He had previously been convicted of several violent felonies including involuntary manslaughter and armed robbery.

■ Moreover, the record fails to demonstrate prejudice. There was no jury present during sentencing, *see State v. McMurtrey,* 136 Ariz. 93, 98, 664 P.2d 637, 642 (1983)(finding no error because jury did not see the shackles), and nothing indicates that the restraints detracted from defendant's concentration while testifying. In fact, the transcript reflects that defendant was extremely focused in addressing virtually all of the points he had raised in his written notice of mitigating factors.

## VI. Death Eligibility Under *Tison*

Because the murder occurred before the United States Supreme Court handed down *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), defendant claims that use of the *Tison* standard to determine his death eligibility constituted an *ex post*

*facto* violation. As defendant concedes, however, this court rejected the same argument in *State v. Salazar*, 173 Ariz. 399, 413, 844 P.2d 566, 580 (1992), and we choose not to revisit the issue.

## VII. Aggravating Factors

At resentencing, the court found two aggravating factors: a prior felony involving the use or threat of violence under A.R.S. § 13–703(F)(2), and an offense committed in expectation of pecuniary gain pursuant to section 13–703(F)(5). Defendant challenges the validity of both findings. He first argues that his California armed robbery conviction does not satisfy (F)(2) because the crime, as defined by statute, does not necessarily involve the use or threat of violence against another person. We have previously rejected this argument in *State v. Correll*, 148 Ariz. 468, 479, 715 P.2d 721, 732 (1986), and more recently in *State v. Kemp*, 185 Ariz. 52, 64, 912 P.2d 1281, 1293, *cert. denied, Kemp v. Arizona*, — U.S. —, 117 S.Ct. 117, 136 L.Ed.2d 68 (1996). We see no reason to reconsider it here.

■ Defendant further asserts that his 25–year–old armed robbery conviction is too remote in time to support the (F)(2) aggravating factor. Unlike other enhancement or aggravation statutes, however, A.R.S. § 13–703(F)(2) does not expressly provide a time limitation. *Cf.* A.R.S. § 13–604(U)(1)(b) (to enhance sentence under "dangerous and repetitive offender" statute, a prior conviction must have been obtained within 10 years of present offense); A.R.S. § 28–697(G) (three prior D.U.I.s within 60 months result in felony D.U.I.). In light of the inclusion of such provisions in analogous statutes, we assume that the omission in (F)(2) was intentional. In any event, during much of the intervening 25–year period, defendant was in prison and thus restricted in his ability to commit further crimes. Allowing him to advantageously use this time would be anomalous.

With respect to the (F)(5) factor, we have already upheld the trial court's conclusion that expectation of pecuniary gain was the impetus for this killing. *Henry*, 176 Ariz. at 588, 863 P.2d at 880. We see nothing in the present record that would cause us to reverse that finding.

## VIII. Mitigating Factors

The trial court found one statutory mitigating factor, A.R.S. § 13–703(G)(1)(significantly impaired capacity to appreciate the wrongfulness of conduct or to conform conduct to the law). Defendant complains that the judge failed to credit him with the following non-statutory mitigation: sentence disparity, intelligence and education, good behavior in prison, the felony murder instruction, intoxication, history of substance abuse, and traumatic upbringing.

■ We turn first to the disparity in sentences received by defendant and his co-defendant, Vernon Foote. The same judge presided over both cases. After Foote's trial resulted in a hung jury, the prosecutor offered to let him plead guilty to attempted murder. Foote accepted and was sentenced to 15 years in prison. At defendant's resentencing, the court emphasized that he attached no importance to the fact that Foote had entered into the plea agreement. Instead, he stated, "[w]hat I did attach significance to is what he pled to. He pled guilty to attempted first degree murder. That is not the same as pleading to first degree murder obviously and he didn't plead guilty to kidnapping...." The judge also noted that unlike defendant, Foote had no prior felonies or convictions involving crimes against persons.

■ Unexplained disparity between sentences may constitute a mitigating factor. *State v. Dickens*, 187 Ariz. 1, 25–26, 926 P.2d 468, 492–93 (1996); *State v. Schurz*, 176 Ariz. 46, 57, 859 P.2d 156, 167 (1993). As defendant asserts, plea bargaining will not always explain gross differences in punishment. *See State v. Marlow*, 163 Ariz. 65, 71–72, 786 P.2d 395, 401–402 (1989). Here, however, the men's distinct criminal backgrounds were sufficient to justify the disparity in penalties. Furthermore, defendant's assertion that Arizona law prohibits judges from using criminal history to reject mitigation is meritless. *See, e.g., State v. Miller*, 186 Ariz. 314, 326, 921 P.2d 1151, 1163 (1996), *cert. denied, Miller v. Arizona*, — U.S. —, 117 S.Ct. 1088, 137

L.Ed.2d 221 (1997); *State v. Murray*, 184 Ariz. 9, 43, 906 P.2d 542, 576 (1995).

■ According to defendant, the trial judge failed to consider intelligence and education as mitigating factors because he believed they could never qualify as such. This is not an accurate representation of the record. The court stated that it would be "totally incomprehensible to find [intelligence and education] as a mitigating factor *in this case* ...." (Emphasis added). We agree. Defendant frequently used his intelligence for purposes of deception. For example, he gave police a false name to avoid being connected to an outstanding warrant and lied about events surrounding the murder to conceal his involvement. We see no reason to reward an individual who uses his education and intelligence in duplicitous ways.

■ Defendant also claims that the trial court erred in refusing to consider that he assisted other inmates with legal research and helped to establish a prison law library. The record belies his assertion, revealing that the court expressly considered this evidence but decided it was not "the type of circumstance that rises to the level of what mitigation ought to be." Although there is no requirement that evidence reach a particular threshold to warrant consideration as a mitigating factor, we believe the judge was saying that this information, even if true, carried little or no weight.

Our review of the record confirms the court's conclusion. First, aside from testimony by defendant—described by the judge as one of the least credible witnesses ever seen in his courtroom—there is no evidence that he helped establish a library. As for providing legal assistance, the court had warned defendant on several occasions that he was authorized to use the library only for his own case. He was not permitted to do research for other inmates. Therefore, any mitigating value was nullified by his disregard of this directive.

■ According to defendant, his "lack of disciplinary problems" in prison should also have been regarded as a mitigating circumstance. In *State v. Hinchey*, 181 Ariz. 307, 314–15, 890 P.2d 602, 609–10 (1995), this court held that a sentencing judge is not required to accept in mitigation the fact that a defendant has been a model prisoner. Moreover, the record here indicates that defendant was less than the ideal inmate. In response to specific questioning, his own witness would only admit that he was "about the average" for a person on death row.

■ Defendant also challenges the resentencing judge's refusal to find that the felony murder instruction given at trial was a mitigating circumstance. We have held that such an instruction may be mitigating where there is some doubt as to a defendant's specific intent to kill. *State v. Bolton*, 182 Ariz. 290, 315, 896 P.2d 830, 855 (1995) (citations omitted); *State v. Atwood*, 171 Ariz. 576, 648–49, 832 P.2d 593, 665–66 (1992). As stated in our earlier opinion, however, the evidence "supports ... a conclusion that Henry was an active, *intentional* participant in the killing." 176 Ariz. at 588, 863 P.2d at 880 (emphasis added). Among other things, the record indicates that two people dragged the victim up the berm, defendant's clothes were spattered with blood, he hastily drove off after the stabbing, and later gave false information to the police. *Id.* Thus, we find no error despite some confusion in the trial judge's explanation for his refusal to give the instruction mitigating effect. He stated, "I go back to my finding that the *Tison* standard has been met in this case...." Obviously, a felony murder instruction may still be mitigating where death eligibility has been established under the *Tison* standard. Concluding otherwise would render meaningless our holding in *Bolton.*

■ Defendant also claims that the court improperly failed to find his intoxication and history of alcohol and drug abuse as non-statutory mitigating factors. With respect to the former, the court found that defendant's intoxication at the time of the homicide impaired his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law under A.R.S. § 13–703(G)(1). It would have been redundant to count this evidence again as non-statutory mitigation. We find insufficient proof of historical substance

abuse, but in any event, this would provide no additional mitigation without evidence of a causal connection to the crime. *See State v. Medrano*, 185 Ariz. 192, 195–96, 914 P.2d 225, 228–29 (1996); *Bible*, 175 Ariz. at 609, 858 P.2d at 1212.

Finally, defendant argues that the court erred in failing to give mitigating weight to the fact that he had saved the lives of four people during his lifetime and had endured a traumatic upbringing. In *Henry*, we upheld the court's conclusions regarding these factors, 176 Ariz. at 588, 863 P.2d at 880, and nothing presented since that decision persuades us to do otherwise.

## CONCLUSION

Following our independent review, we affirm the two aggravating factors and one statutory mitigating factor. On balance, we conclude that the mitigation is not sufficiently substantial to call for leniency. Therefore, defendant's capital sentence is affirmed.

JONES, V.C.J., and FELDMAN, MOELLER and MARTONE, JJ., concurring.