NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

CLARENCE ANDREW TULL, *Appellant.*

No. 1 CA-CR 14-0622
FILED 11-8-2016

---

Appeal from the Superior Court in Maricopa County
No. CR2011-123789-016
The Honorable Sherry K. Stephens, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Ballecer & Segal, LLP, Phoenix
By Natalee Segal
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Patricia K. Norris and Judge Patricia A. Orozco joined.

**S W A N N**, Judge:

**¶1**            A jury found Clarence Andrew Tull ("Defendant") guilty of the following felonies: one count each of illegal control of an enterprise, conspiracy to commit sale or transportation of marijuana in an amount of two pounds or more, possession of marijuana for sale in an amount of more than four pounds, money laundering in the second degree, use of wire communication or electronic communication in drug-related transactions in an amount of two pounds or more; seven counts of use of wire communication or electronic communication in drug-related transactions; and four counts of sale or transportation of marijuana in an amount of two pounds or more.  Defendant appeals his convictions and the sentences imposed, arguing the trial court erred by denying his pretrial request to proceed *in propria persona* ("pro per"), or in the alternative, by denying his trial counsel's motion to withdraw and to have new counsel appointed.  For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2**            After a four-month wiretap investigation into a marijuana trafficking ring, Defendant and 15 others were indicted on June 22, 2011.  Defendant apparently retained counsel after his arraignment.  Fewer than three months later, Defendant retained substitute counsel, who later withdrew from the representation when Defendant failed to substantially fulfill his attorney-client obligations.  Meanwhile, the court designated the case as complex.

**¶3**            The court assigned counsel, who later moved to withdraw because "irreconcilable differences have arisen such that attorney-client communication has totally broken down."  The court granted the motion at a case-management conference, and Defendant requested to proceed pro

---

[1]      We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against the defendant.  *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2 (App. 2015).

per.  The court assigned Defendant new counsel to assist the court in determining whether to grant Defendant's request.

¶4        Two weeks later, L.W. represented Defendant at a status conference where she informed the court that Defendant refused to meet with her.  The court then addressed Defendant, and the following ensued:

> THE COURT: Is that true, sir?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Why would you refuse to meet with [L.W.]?
>
> THE DEFENDANT: I made it quite clear last time I was here that I would not be needing her assistance.
>
> THE COURT: So you're prepared to represent yourself?
>
> THE DEFENDANT: I don't have to represent myself, I'm presenting myself.
>
> THE COURT: Well, no, sir.  You do.  You have to make a decision about whether or not you want to have counsel or if you want to make all the choices on your own.  There's nothing in between.  Either you're your own attorney and you're responsible for filing all of your motions knowing the rules of evidence, the rules of criminal procedure, the substantive criminal law, or you're going to have [L.W.] assist you.  And if you don't cooperate with her and talk with her, then the only person who suffers is you, because she can't represent you if you don't talk to her.  You have to communicate.
>
> And I understand that you have all kinds of philosophy and beliefs regarding the State of Arizona, but separate and apart from that, you are facing criminal charges.  You are facing a substantial amount of time being incarcerated.  Obviously, it would be to your benefit to avail yourself of [L.W.]'s services, but I can't make you do that.
>
> If you want to represent yourself, I'll let you do that and I'll ask you a series of questions here momentarily, but I think that it would be foolish of you to try to undertake representation of yourself.  You're not a lawyer.  You don't

have any prior experience doing this. She is an attorney. It's her job to represent you.

So what would you like to do, sir?

THE DEFENDANT: Like I said, I'm a Moorish-American citizen and that place me [sic] that you don't have jurisdiction over me.

THE COURT: Well, sir, I do have jurisdiction over you. This Court has jurisdiction over you.

THE DEFENDANT: Lawfully, you don't have lawful jurisdiction over me. Whatever jurisdiction you may claim to have, you do not have jurisdiction over Moorish-American citizen, which is protected by the Treaty of Peace and Friendship of 1787.

THE COURT: Alright. Sir, well, you violated the laws of Arizona, or you are, at least, [alleged to have violated] the laws of Arizona.

THE DEFENDANT: Alleged.

THE COURT: So the issue is whether or not you would like an attorney to assist you in connection with the criminal charges that are pending, so I need an answer from you today, sir.

What would you like to do?

THE DEFENDANT: I will not participate willingly with any criminal charges you all would proceed with. Y'all go ahead and do it, but I will not participate. And right now I'm saying I conditionally accept your offer regarding proof of claim and any offer that's presented. That is all I got to say.

THE COURT: Well, sir, in light of that response then, I am going to assume that you need the services of [L.W.] and I'm going to order that she continue to represent you as your lawyer. And if, at any time, you wish to cooperate with the Court and answer the questions that I would need to ask you in order for you to represent yourself, you can let me know. But short of that, I'm going to order that [L.W.] continue to

represent you as your attorney. Again, I will stress the importance of you cooperating with her, communicating with her, giving her the information she needs so that she can represent you. She can't do that if you do not discuss your case with her.

Does that make [sense], sir? Yes or no? Does that make sense?

THE DEFENDANT: Like I said, I'm not answer [sic] any more questions.

THE COURT: Okay. Then we'll just assume that you've heard me and that you are aware of the importance of communicating with your lawyer.

¶5        One year later, and approximately one month before trial was scheduled to begin, L.W. unsuccessfully moved to withdraw on the basis of Defendant's continued refusal to communicate with her. Trial commenced on April 23, 2014, and lasted 33 days over the course of almost four months.[2]

## DISCUSSION

¶6        We review a trial court's denial of a request to proceed without counsel for an abuse of discretion. *State v. Dann*, 220 Ariz. 351, 360, ¶ 25 (2009). Similarly, we review a trial court's decision to deny counsel's motion to withdraw for an abuse of discretion. *State v. Jones*, 185 Ariz. 471, 482 (1996).

¶7        Criminal defendants have a constitutional right to be represented by counsel. *State v. LaGrand*, 152 Ariz. 483, 486 (1987). Defendants do not, however, have the right to counsel of their choosing, only to competent counsel. *Id.* "The federal and state constitutions [also] guarantee the right to waive counsel and to represent oneself." *Dann*, 220 Ariz. at 359, ¶ 16; *see also Faretta v. California*, 422 U.S. 806, 832-33 (1975). "A defendant may waive his or her rights to counsel . . ., in writing, after the court has ascertained that he or she knowingly, intelligently and voluntarily desires to forego them." Ariz. R. Crim. P. 6.1(c); *see also Faretta*, 422 U.S. at 835. A request for self-representation must be unequivocal. *State v. Henry,* 189 Ariz. 542, 548 (1997).

¶8        Here, Defendant's statements when the court inquired into his purported desire to represent himself do not illustrate an unequivocal

---

[2]        Defendant was tried with three codefendants in front of a dual jury.

request for self-representation. And assuming Defendant did unequivocally request counsel two weeks before the court's inquiry, he did not do so in writing, and he refused to cooperate with the court so that it could, as required by Ariz. R. Crim. P. 6.1, determine whether Defendant knowingly, intelligently, and voluntarily desired to represent himself. Indeed, Defendant expressly stated that he would not "participate" and would not answer questions. The court acted well within its discretion in not permitting Defendant to proceed pro per.[3]

¶9        The court also did not abuse its discretion by denying L.W.'s motion to withdraw and to have substitute counsel appointed. When denying a motion to withdraw, an abuse of discretion generally occurs if counsel has established "an ethical conflict requiring withdrawal." *Maricopa Cnty. Pub. Defender's Office v. Superior Court (Nelson)*, 187 Ariz. 162, 167 (App. 1996); *see also State v. Bush,* 108 Ariz. 148, 151 (1972) (finding "clear showing of a conflict" of interest); *Okeani v. Superior Court (Romley),* 178 Ariz. 180, 182 (App. 1993) (finding counsel's "continued representation of defendant would have resulted in a violation of the ethical rules"). A trial court also abuses its discretion in denying a motion to withdraw when, in the absence of prejudice to the defendant or the judicial process, the motion was filed before trial was set, and it was based on the defendant's non-payment of fees. *Riley, Hoggatt & Suagee, P.C. v. Riley*, 165 Ariz. 138, 140 (App. 1990).

¶10        Here, L.W. filed her motion to withdraw approximately one month before the scheduled trial date. The basis for the motion was Defendant's unwillingness to speak or cooperate with L.W., apparently because she would not advance Defendant's theory that his "sovereignty" deprived the court of jurisdiction.[4] The motion did not refer to a conflict of interest or ethical violation that would result from continued representation. Furthermore, the motion was not, as required by Ariz. R. Crim. P. 6.3(c), "accompanied by the name and address of another attorney,

---

[3]        We note that, had the court permitted Defendant to represent himself, he "might later have had a compelling argument that he never made a genuine waiver of counsel," which is a result that the requirement for an unequivocal request seeks to avoid. *Henry*, 189 Ariz. at 548.

[4]        The treaty on which Defendant based his jurisdictional argument was between the preconstitutional government of the United States and that of Morocco. No text of the treaty supports Defendant's argument, and the treaty expired by its terms in the first half of the 19th century. Treaty of Peace and Friendship, U.S.-Morocco, art. 25, June 28-July 15, 1786.

together with a signed statement by the substituting attorney that he is advised of the trial date and will be prepared for trial." No abuse of discretion occurred.

¶11 Regarding Defendant's assertion that the trial court should have appointed counsel to replace L.W., nothing in the record indicates Defendant made such a request. Because the court did not err in denying the motion to withdraw, it was not required to *sua sponte* appoint substitute counsel. And even if Defendant had requested substitute counsel, his proclivity to change counsel, in addition to his insistence to "go[ ] on my sovereignty," demonstrates that new counsel would face the same difficulties L.W. experienced during her representation of Defendant.[5] Thus, the court would have acted within its discretion to deny a request to appoint substitute counsel. *See LaGrand,* 152 Ariz. at 486-87 (listing the factors considered by a trial court when deciding whether to appoint substitute counsel, including the proclivity of the defendant to change counsel and whether new counsel would be confronted with the same conflict as current counsel).

**CONCLUSION**

¶12 Defendant's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[5] Defendant points to nothing in the record indicating L.W. could not competently represent him.